J-S50041-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID HUERTAS | : | |
| | : | |
| Appellant | : | No. 1915 EDA 2016 |

Appeal from the Judgment of Sentence April 29, 2016
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0001251-2015

BEFORE: PANELLA, MOULTON, and RANSOM, JJ.

MEMORANDUM BY RANSOM, J.:                **FILED SEPTEMBER 19, 2017**

Appellant, David Huertas, appeals from the judgment of sentence of sixty to one hundred forty years of incarceration, imposed April 29, 2016, following a jury trial resulting in his conviction for Rape of a Child, two counts of Involuntary Deviate Sexual Intercourse with a Person Less than 16 Years of Age, Involuntary Deviate Sexual Intercourse with a Child, Aggravated Indecent Assault with Complainant Less than 16 Years of Age, two counts of Corruption of Minors with Defendant Age 18 or Above, and Indecent Assault of a Person Less than 16 Years of Age.[1]  We affirm.

The trial court summarized the facts of the case as follows:

---

[1] 18 Pa.C.S.A. §§ 3121(c), 3123(a)(7), 3123(b), 3125(a)(8), 6301(a)(1)(ii), 3126(a)(8), respectively.

In the instant case, the testimony at trial revealed that L.M. is a 15 year old girl, with a date of birth of May [], 2000. Additionally, N.D. is a 13 year old girl, with a date of birth of September [], 2002. [Appellant], David Huertas, is L.M.'s and N.D.'s stepfather. [Appellant] was the only father who[m] L.M. and N.D. knew, as he had been in their lives since they were very young.

Starting in the summer of 2011, when L.M. was approximately eleven (11) years old, [Appellant] called her into his bedroom and touched her "in ways that she did not like." At that time, L.M. was living at 714 Washington Street, Allentown, Lehigh County, Pennsylvania. She was living with [Appellant], his mother (Frances), her mother, her two (2) sisters (N.D. and J.M.), and her brother (D.H.). L.M.'s uncle and his family lived with them for a period of time at this residence as well. Indeed, at one time, there were fourteen (14) people living in the residence.

During the time that L.M. lived at the residence on Washington Street, [Appellant] frequently would touch her breasts under and over her clothes. He also would frequently touch her vagina, both over and under her clothes. By "touch", L.M. explained that [Appellant] would use his hand and his penis to glide over and penetrate the inside of her vagina. This "touching" would occur when [Appellant] was alone with L.M. in his bedroom, and happened multiple times. [Appellant] instructed L.M. to do certain things, such as touch his penis. L.M. testified that [Appellant's] penis was big and hard to the touch. In addition, L.M. explained that she also "touched" [Appellant's] penis with her mouth. This occurred nearly every time. Even though L.M. did not want to do such actions, she was afraid to say "no" to her stepfather. She feared that [Appellant] would get mad and exhibit an attitude and take his anger out on everyone around him. L.M. did not report this "touching" to anyone, because she did not think that anyone would believe her.

There were times when L.M.'s sister, N.D., was also present. L.M. witnessed N.D. "touching" [Appellant's] penis as to [Appellant] instructed her to so do. On November 1, 2013, L.M., N.D. and their family moved to a residence located at 1739 Hanover Avenue, Allentown, Lehigh County, Pennsylvania. As on Washington Street, L.M. and N.D. were living with [Appellant], their mother, their younger sister, and their brother. [Appellant's] mother lived with them on Hanover Avenue as well.

The "touching" continued to occur at the Hanover residence. [Appellant] would frequently call L.M. and/or N.D. into his bedroom, and make L.M. and/or N.D. touch his penis. He would make them take off their clothes and he would touch L.M.'s breast and butt. [Appellant] would glide over and penetrate L.M.'s vagina with his penis. He would also rub his penis against the outside of N.D.'s vagina. After he was "satisfied" and ejaculated, he would wipe off the ejaculation.[2]

At times, when L.M. was 13 or 14 years old, and N.D. was 11 or 12 years old, [Appellant] had N.D. hold his penis with her hand while L.M. put her mouth on [Appellant's] penis. [Appellant] also had N.D. put her mouth on his penis while L.M. held his penis.

N.D. was also "touched" by [Appellant] when L.M. was not present. N.D. specifically recounted that when she was 11 years old, [Appellant] "touched" her and had her put his penis in her mouth. [Appellant] had instructed her to take off her clothes and he had pulled his pants down, but not all the way off. [Appellant] touched her in her private parts using his hands and his penis. Although he never penetrated her vagina, he would rub his penis against her. N.D. testified that she did not want to do such acts, but that [Appellant] offered her money to do them.

In November of 2014, N.D. confided in her best friend at school about the "touching" that was going on with [Appellant]. She mentioned it again to this friend in January of 2015. Thereafter, on February 4, 2015, at approximately 7:39 A.M., L.M. sent her aunt, Eraka Rivera Cruz, a text message, implying that someone was "touching" her. When L.M. actually spoke with her aunt on the telephone, she told her that [Appellant] had been touching her. The aunt advised her to inform her mother of same. L.M. took her aunt's advice and told her mother. That day, both [Appellant] and the mother picked L.M. up from school. [Appellant] took L.M.'s cell phone when she entered the vehicle.

---

[2] According to L.M., [Appellant] had surgery on his penis in 2014, L.M. indicated that after the surgery, [Appellant's] penis was smaller and no longer had the "skin" on it. Additionally, it was no longer hard. Even though after the surgery [Appellant] was impotent and could not become erect, he continued to glide his penis over the girls' vaginas, but was no longer able to penetrate L.M.

Her mother yelled at her when they returned home. When N.D. supported her sister's account of what had been transpiring, her mother yelled at her and slapped her. The next day, L.M. borrowed a telephone from her friend at school and called her aunt again. Her aunt notified the police of what L.M. had confided in her, and subsequent medical examinations were performed on L.M. and N.D.

Trial Court Opinion, 7/20/16 at 4-7 (citations and some footnotes omitted).

In December 2015, a jury trial commenced, after which Appellant was found guilty of the aforementioned crimes. He was sentenced as outlined above. Appellant timely filed a post sentence motion, which was denied by the trial court in June 2016. Appellant timely appealed and filed a court-ordered statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court issued a responsive statement.

Appellant raises the following issues for review:

A. Whether or not the evidence as presented was sufficient as a matter of law to support the conviction for Rape of a Child, two counts of Involuntary Deviate Sexual Intercourse with a Person Less than 16 Years of Age, Aggravated Indecent Assault, two counts of Corruption of Minors, and Indecent Assault of the Person Less than 16 Years of Age when the evidence that [Appellant] was the perpetrator or could of done the acts alleged was questionable and uncertain?

B. Was the verdict against the weight of all the evidence in regards to the proof of whether or not [Appellant] was guilty of the charges?

C. Did the lower court err in denying [Appellant's] request to recall one of the victims to cross-examine her on alleged prior inconsistent statements?

Appellant's Brief at 9-10.

Appellant purports to challenge the sufficiency of the evidence presented at trial. "In order to develop a claim challenging the sufficiency of the evidence properly, an appellant must specifically discuss the elements of the crime and identify those which he alleges the Commonwealth failed to prove." *Commonwealth v. Samuel*, 102 A.3d 1001, 1005 (Pa. Super. 2014) (citing *Commonwealth v. McDonald*, 17 A.3d 1282, 1286 (Pa. Super. 2011)).

While Appellant's brief lists the five crimes he was convicted of, he offers no analysis of any particular elements that compromise the charges against him. *See* Appellant's Br. at 14, 17-18. Appellant's blanket assertions that (1) the statements of the two victims were contradictory and (2) there was no physical evidence in support thereof are insufficient. We note that "such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009). Accordingly, Appellant has waived this claim for lack of development. *Samuel*, 102 A.3d at 1005; Pa.R.A.P. 2119(a).

Next, Appellant contends that the verdict is against the weight of the evidence. *See* Appellant's Br. at 18. Appellant suggests that his physical limitations rendered him unable to commit the crimes. *See id.* at 19. Appellant also contends that the abuse could not have happened due to the

number of people residing in the household. *Id.* Appellant essentially challenges the credibility of the victims. *Id.*

The following principles apply to our review of a weight of the evidence claim:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the . . . verdict if it is so contrary to the evidence as to shock one's sense of justice.

> *Commonwealth v. Small*, 741 A.2d 666, 672-73 (Pa. 1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003), *cert. denied*, 542 U.S. 939, (2004) (most internal citations omitted). A trial court's denial of a post-sentence motion based on a weight of the evidence claim is the least assailable of its rulings. *Commonwealth v. Nypaver*, 69 A.3d 708, 717 (Pa. Super. 2013) (internal quotations omitted) (citing *Commonwealth v. Sanders*, 42 A.3d 325, 331 (Pa. Super. 2012).

Furthermore,

> "[w]hen the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review."

- 6 -

***Commonwealth v. Trippett***, 932 A.2d 188, 198 (Pa. Super. 2007) (quoting ***Commonwealth v. Rossetti***, 863 A.2d 1185, 1191 (Pa. Super. 2004) (citation omitted)); ***see also Commonwealth v. Hankerson***, 118 A.3d 415, 420 (Pa. Super. 2015) (noting that this Court may not re-assess the credibility of a witness' testimony when ruling on a weight of the evidence claim).

Here, the fact finder was free to believe L.M. and N.D.'s testimony. After a review of the testimony, we find that the testimony was not so unreliable as to warrant a new trial. As such, we conclude that the trial court did not abuse its discretion in finding the verdict was supported by the weight of the evidence. ***Champney***, 832 A.2d at 408.

Appellant's final claim asserts that the lower court erred in denying his request to recall N.D. to cross-examine her on prior inconsistent statements. Questions concerning the admissibility of evidence are within the discretion of the trial court and will only be reversed upon a showing that the court abused its discretion. ***Commonwealth v. Johnson***, 42 A.3d 1017, 1027 (Pa. 2012). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." ***Id.*** (quoting ***Commonwealth v. Sherwood***, 982 A.2d 483, 495 (Pa. 2009)).

The trial court reasoned as follows:

[Appellant] contends that this [c]ourt erred in precluding N.D. from being called back to the stand to testify on the defense side of the case. Specifically, [Appellant] intended to recall N.D. to impeach her credibility through the inconsistencies between her trial testimony and her prior out-of-court forensic interview statements. [Appellant's] argument is legally flawed.

Initially this [c]ourt notes that Pennsylvania Rule of Evidence 613(a) provides in pertinent part:

Rule 613. Witness's Prior Inconsistent Statement to Impeach

    (a)    Witness's Prior Inconsistent Statement to Impeach

        A witness may be examined concerning a prior inconsistent statement made by the witness to impeach the witness' credibility.

Pa. R.E. 613(a). Therefore, in compliance with the law, this [c]ourt indicated that it would allow N.D. to retake the witness stand if, in fact, her statements were inconsistent. Consequently, this [c]ourt requested that defense counsel set forth on the record the alleged inconsistencies in her testimony. Defense counsel represented to this [c]ourt that N.D. had stated three (3) times during the audio recorded statement that she provided to the forensic interviewer that [Appellant] had just "laid his hands on her." There was no mention of oral sex. In contrast, at trial N.D. had testified that she performed oral sex on [Appellant].

While at first blush these statements appear to be inconsistent, upon further exploration by this [c]ourt, it was revealed that these three (3) statements were taken out of context. These three (3) statements were made at the beginning of the audiotaped interview, but N.D. ultimately stated near the end of her audio recorded interview that oral sex did occur. Both the attorney for the Commonwealth and defense counsel acknowledged that at the end of the audio recording, N.D. did mention the occurrence of oral sex. Therefore, this [c]ourt concluded that N.D.'s audio recorded statement had to be taken as a whole for it not to be misleading or misrepresenting. Thus, in light of N.D.'s complete audio recorded forensic interview statement, this [c]ourt found there was no inconsistency that [Appellant] could use to impeach her testimony. Accordingly, this [c]ourt properly and legally precluded [Appellant] from recalling N.D. for the purpose of impeaching her credibility.

Trial Court Opinion at 9-11.

In review of the record, we discern no abuse of discretion in the trial court's ruling. ***See Johnson***, 42 A.3d at 1027.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/19/2017