J-S33020-15

2015 PA Super 134

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| TYSHAWN HANKERSON, | : | |
| | : | |
| Appellant | : | No. 938 EDA 2014 |

Appeal from the Judgment of Sentence February 18, 2014,
Court of Common Pleas, Lehigh County,
Criminal Division at No. CP-39-CR-0001057-2013

BEFORE: FORD ELLIOTT, P.J.E., DONOHUE and LAZARUS, JJ.

OPINION BY DONOHUE, J.:                                          **FILED JUNE 8, 2015**

Tyshawn Hankerson ("Hankerson") appeals from the judgment of
sentence imposed following his convictions of robbery, burglary and
conspiracy. His court-appointed counsel ("Counsel") has filed a petition
seeking to withdraw and a brief in support thereof pursuant to ***Anders v.
California***, 386 U.S. 738 (1967) and ***Commonwealth v. Santiago***, 978
A.2d 349 (Pa. 2009). Following our review, we deny Counsel's request,
vacate the judgment of sentence and remand for resentencing.

We begin with the relevant factual background, which the trial court
summarized as follows:

> At approximately 11 a.m. on March 8, 2012,
> Megan Keinert was alone in her house located at 105
> Chestnut Street, Coplay, Lehigh County,
> Pennsylvania. She shared her home with her father,
> her brother, and her boyfriend. While watching
> television in her bedroom on the third floor, Ms.

Keinert heard noise coming from her brother's room on the second floor. Ms. Keinert, believing that her brother had returned home early from school, came down the stairs. At the time, she was holding her cellular telephone in her hand. She entered her brother's room and saw a black male, approximately six feet tall, wearing a baseball cap and jacket. Ms. Keinert also noted a bit of "scruff" on the individual's face and that he appeared shocked to see her.

Ms. Keinert asked the individual, "Can I help you?" and made eye contact with him. The individual stepped back and then came forward toward Ms. Keinert and put a gun to her forehead. At that point, there was sunlight coming into the room and the individual was within arm's reach of Ms. Keinert. Ms. Keinert believed the gun was a silver handgun, approximately five to six inches long. Ms. Keinert estimated that she observed the individual for approximately [thirty] seconds. The individual directed Ms. Keinert to sit down and look down. He asked her where money in the home was located and Ms. Keinert told him that there wasn't any money in the home. He also inquired as to whether there were additional people in the home. She told him they were alone. He told Ms. Keinert to lie down and tied her hands with a shoe lace [sic]. Ms. Keinert could hear the individual searching the rest of the second floor and then proceed to the third floor. After three to five minutes, Ms. Keinert stood up and began to look for something to defend herself with. She found a pocketknife, which she opened and put under the bed nearby. The individual, having heard Ms. Keinert moving around, told her to lie back down.

Ms. Keinert was able to detect two male voices on the first floor. The individual she had encountered remained on the first floor for three to five minutes and then returned. Ms. Keinert was still on the floor. The individual put a towel and a gun to the back of her head and instructed Ms. Keinert to count to 300[,] and then left.

Ms. Keinert counted to 163, pulled off the towel … and called out. When no one responded, she left. She ran through the kitchen and out of the sunroom, to the outside.

At approximately the same time, Allen Lindenmuth and his friend stopped for lunch at Benny's Hot Dogs, located on Front Street in Coplay. Mr. Lindenmuth ate his lunch while sitting in his work vehicle, parked in front of the Keinert residence. He noticed a black male come out from the area between the house and fence, wearing a black hat, coat, and jeans, carrying two Giant grocery store reusable bags. Approximately one to one and a half minutes later, a female, later identified as Megan Keinert, exited the residence. She approached the vehicle, asked to borrow Mr. Lindenmuth's cellular telephone, and stated that she had just been robbed. Mr. Lindenmuth attempted to chase the black male but was unable to locate him.

\*\*\*

When the Coplay police arrived, Ms. Keinert related the encounter and a description of the individual. The family determined that after the robbery, a laptop computer, an iPod, video gaming equipment and games were taken from the second floor. Additionally, DVDs, a Blu-ray player, night vision binoculars and prescription pain medicine were taken from the home.

\*\*\*

A few days after the incident, Ms. Keinert went onto Facebook. She had a "gut feeling" that someone who knew the layout of her home was involved in the burglary/robbery. Specifically, she believed that her father's ex-fiance's [sic] son, Nicholas, had something to do with the robbery. Ms. Keinert went onto Nicholas' Facebook page and began to look at his "friends" list and then to

message posts on Nicholas' page. Ms. Keinert noticed a post of "[h]it me up" from an individual whom she believed she recognized as the individual she had encountered when she was robbed and her home was burglarized.

Ms. Keinert, conducting her own investigation, then visited that individual's Facebook page where she saw photographs of the individual and his user name "Tyshawn Smash." Upon Googling the name "Tyshawn Smash," Ms. Keinert was directed to websites containing music recordings. Upon listening to the music, Ms. Keinert recognized the voice and believed that that was the individual who she encountered in her home. Ms. Keinert brought her "investigation" to the attention of the police. Eventually, the police were able to develop a lineup of possible suspects and included "Tyshawn Smash's" picture. It was later determined that "Tyshawn Smash" was the [a]ppellant, Tyshawn Henderson [sic]. Ms. Keinert picked [Hankerson's] picture out immediately as the person who robbed her in her home. At trial, Ms. Keinert positively identified [Hankerson] as the man who entered her home and robbed her.

Trial Court Opinion, 8/26/14, at 3-5. At the conclusion of a three-day jury trial, Hankerson was convicted of the offenses listed above. The trial court sentenced Hankerson to an aggregate term of seven to twenty years of imprisonment. When fashioning this sentence, the trial court applied the sentencing enhancement provided in 42 Pa.C.S.A. § 9712. The trial court denied Hankerson's post-sentence motion and at Hankerson's request, Counsel timely filed this appeal. Rather than file an advocate's brief, however, Counsel filed a petition seeking to withdraw and *Anders* brief.

A request by appointed counsel to withdraw pursuant to **Anders** and **Santiago** gives rise to certain requirements and obligations, for both appointed counsel and this Court. **Commonwealth v. Flowers**, ___ A.3d ___, 2015 WL 1612010, *1 (Pa. Super. Apr. 10, 2015).

> These requirements and the significant protection they provide to an **Anders** appellant arise because a criminal defendant has a constitutional right to a direct appeal and to counsel on that appeal. **Commonwealth v. Woods**, 939 A.2d 896, 898 (Pa. Super. 2007). This Court has summarized these requirements as follows:
>
>> Direct appeal counsel seeking to withdraw under **Anders** must file a petition averring that, after a conscientious examination of the record, counsel finds the appeal to be wholly frivolous. Counsel must also file an **Anders** brief setting forth issues that might arguably support the appeal along with any other issues necessary for the effective appellate presentation thereof.
>>
>> **Anders** counsel must also provide a copy of the **Anders** petition and brief to the appellant, advising the appellant of the right to retain new counsel, proceed pro se or raise any additional points worthy of this Court's attention.
>
> **Woods**, 939 A.2d at 898 (citations omitted).
>
> There are also requirements as to the precise content of an **Anders** brief:
>
>> [T]he **Anders** brief that accompanies court-appointed counsel's petition to withdraw ... must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel

- 5 -

> believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.
>
> *Santiago*, 978 A.2d at 361.

*Id.* at **1-2. If this Court determines that appointed counsel has met these obligations, it is then our responsibility "to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." *Id.* at *2. In so doing, we review not only the issues identified by appointed counsel in the *Anders* brief, but examine all of the proceedings to "make certain that appointed counsel has not overlooked the existence of potentially non-frivolous issues." *Id.*

Counsel has satisfied the procedural requirements of *Anders* and *Santiago.* He has filed a petition seeking to withdraw with this Court, in which he states his belief that after an examination of the record, the appeal is wholly frivolous. Attached to that petition is a copy of the letter he sent to Hankerson, which indicates that he enclosed copies of his petition to withdraw and *Anders* brief and advises Hankerson that he can retain new counsel or proceed pro se to raise with this Court any additional points he deems worthy, and further advises that if he wishes to do either, he must act quickly. Further, the content of Counsel's *Anders* brief conforms to the

*Santiago* requirements previously set forth. Accordingly, we undertake our independent review to determine whether Hankerson's appeal is wholly frivolous.

The first issue Counsel presents is that the identification process was unduly suggestive and therefore improper. *Anders* Brief at 12. Hankerson did not raise this issue before the trial court. It is axiomatic that an issue cannot be raised for the first time on appeal. *Commonwealth v. Strunk,* 953 A.2d 577, 579 (Pa. Super. 2008); *Commonwealth v. Haughwout*, 837 A.2d 480, 486 (Pa. Super. 2003) (issues, even of constitutional dimension, are waived if not raised in the court below); Pa.R.A.P. 302(a). Accordingly, we agree with Counsel that this issue is frivolous.[1]

Second, Counsel presents a challenge to the verdict as against the weight of the evidence. *Anders* Brief at 12-13. The law pertaining to weight of the evidence claims is well settled. The weight of the evidence is a matter exclusively for the finder of fact who is free to believe all, part, or none of the evidence, and determine the credibility of the witnesses. *Commonwealth v. Forbes*, 867 A.2d 1268, 1273-74 (Pa. Super. 2005). In determining a weight of the evidence claim, it is not the function of an appellate court to re-assess the credibility of the witnesses' testimony.

---

[1] Even if this issue were not waived, we would still conclude that it is frivolous. As the facts above illustrate, Ms. Keinert's identification of Hankerson as the perpetrator was based on her own investigation, not on the photo array that the police presented to her **after** she provided them with Hankerson's name and photo.

*Commonwealth v. Aguado*, 760 A.2d 1181, 1184 (Pa. Super. 2000) (*en banc*). An appellate court may not reverse a verdict unless it is so contrary to the evidence so as to shock one's sense of justice. *Forbes*, 867 A.2d at 1273-74.

In this case, Ms. Keinert testified that she looked at Hankerson for approximately thirty seconds during the course of the burglary; that she heard Hankerson talking with another man on the first floor of her home; that she recognized Hankerson immediately when she saw his picture on Facebook; that Hankerson used the name "Tyshawn Smash" on Facebook; and that upon hearing the voice of "Tyshawn Smash" (via the music recordings that her investigation revealed), she was "one hundred percent positive" that Hankerson was the man she encountered in her home. *See* N.T., 1/15/14, at 13-76. This evidence, which the jury apparently accepted, is sufficient to support the verdicts, and so Hankerson's convictions under these facts do not shock our sense of justice. Again, we agree with Counsel that this is a frivolous issue for appeal.

Although we agree with Counsel's assessment as to the issues he identified in his *Anders* brief, our independent review of the record has revealed a clearly meritorious issue related to the trial court's application of 42 Pa.C.S.A. § 9712.[2] The trial court applied the mandatory minimum

---

[2] This Court has held that issues challenging the application of a mandatory minimum sentencing statute are challenges to the legality of a sentence.

enhancement provision found at § 9712 when it fashioned Hankerson's sentence based upon the jury's explicit finding that Hankerson possessed a gun when he committed the crimes at issue. N.T., 2/18/14, at 18.

This statute provides, in relevant part, as follows:

> **(a) Mandatory sentence.**--Except as provided under section 9716 (relating to two or more mandatory minimum sentences applicable), any person who is convicted in any court of this Commonwealth of a crime of violence as defined in section 9714(g) (relating to sentences for second and subsequent offenses), shall, if the person visibly possessed a firearm or a replica of a firearm, whether or not the firearm or replica was loaded or functional, that placed the victim in reasonable fear of death or serious bodily injury, during the commission of the offense, be sentenced to a minimum sentence of at least five years of total confinement notwithstanding any other provision of this title or other statute to the contrary. Such persons shall not be eligible for parole, probation, work release or furlough.

> **(b) Proof at sentencing.**--Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The court shall consider any evidence presented at trial and shall afford the Commonwealth and the defendant an opportunity to present any necessary additional evidence and shall

_____

*Commonwealth v. Mosley*, ___ A.3d ___ 2015 WL 1774216, *12 (Pa. Super. Apr. 20, 2015). As such, they are not subject to waiver and this Court may address the issue sua sponte. *Id.*; *Commonwealth v. Orellana*, 86 A.3d 877, 882 n.7 (Pa. Super. 2014).

> determine, by a preponderance of the evidence, if this section is applicable.

42 Pa.C.S.A. § 9712(a)-(b). In a fairly recent decision, this Court found § 9712 unconstitutional, therefore rendering illegal a sentence formulated thereunder. *See Commonwealth v. Valentine*, 101 A.3d 801, 811-12 (Pa. Super. 2014) (finding that § 9712 violates the United States Supreme Court's decision in *Alleyne v. United States*, 133 S.Ct. 2151 (2013), which requires that any facts leading to an increase in mandatory minimum sentence must be presented to a jury and proven beyond a reasonable doubt). In *Valentine*, as in the present case, the jury made a specific finding that the defendant possessed a firearm during the course of the offense. We concluded that this was impermissible:

> Here, the trial court permitted the jury, on the verdict slip, to determine beyond a reasonable doubt whether Appellant possessed a firearm that placed the victim in fear of immediate serious bodily injury in the course of committing a theft for purposes of the mandatory minimum sentencing provisions of 42 Pa.C.S.A. § 9712(a), and whether the crime occurred in whole or in part at or near public transportation, for purposes of the mandatory minimum sentencing provisions of 42 Pa.C.S.A. § 9713(a). The jury responded "yes" to both questions. In presenting those questions to the jury, however, we conclude, in accordance with [*Commonwealth v.*] *Newman*, [99 A.3d 86 (Pa. Super. 2014) (en banc),] that the trial court performed an impermissible legislative function by creating a new procedure in an effort to impose the mandatory minimum sentences in compliance with *Alleyne*.

*Id.* at 811.

Because this Court has found § 9712 to be unconstitutional, Hankerson's sentence is illegal. Accordingly, we vacate Hankerson's judgment of sentence and remand for resentencing without consideration of § 9712.[3]

Petition to withdraw denied. Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/8/2015

---

[3] We note that as **Valentine** was decided while Hankerson's appeal was pending, he is entitled to the application of the new rule of law announced therein. **Newman**, 99 A.2d at 90.