J-S55022-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| LUKE MACGREGOR WILBUR | |
| Appellant | No. 592 MDA 2017 |

Appeal from the Judgment of Sentence September 7, 2016
in the Court of Common Pleas of Franklin County
Criminal Division at No(s): CP-28-CR-0002127-2015

BEFORE:  DUBOW, J., RANSOM, J., and STRASSBURGER, J.[*]

MEMORANDUM BY RANSOM, J.:                **FILED OCTOBER 04, 2017**

Appellant, Luke MacGregor Wilbur, appeals from the judgment of sentence of sixty to one hundred twenty months of incarceration, followed by sixty months of probation, imposed September 7, 2016, following a jury trial resulting in his conviction for rape of an unconscious victim.[1] Additionally, Appellant's counsel, Jonathan C. Faust, Esq., seeks to withdraw his representation of Appellant pursuant to **Anders v. California**, 87 S. Ct. 1936 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). We affirm and grant counsel's petition to withdraw.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 3121(3).

We adopt the following statement of facts from the trial court opinion, which in turn is supported by the record. *See* Trial Court Opinion (TCO), 5/16/17, at 2-13. The victim, C.M., met Appellant through a mutual friend, N.W., two summers prior to the trial. Although Appellant expressed romantic interest in C.M., she repeatedly refused his advances. Regardless, she had gone out with Appellant in the company of other people, and she had previously danced with him. N.W. was aware of Appellant's interest in C.M. but also knew C.M. made it clear she was not interested in him. As of August 9, 2015, C.M. had not seen Appellant for approximately one year and was in a committed relationship with another man.

On that day, C.M. made plans to spend the weekend with N.W. The two women went to two bars, where C.M. had three mixed drinks, two of which contained Red Bull. Later that night, N.W. received two phone calls: one from her husband, requesting she come home, and another from Appellant, who wanted to know what she was doing because he was going to a party. C.M. asked N.W. if she thought it was a good idea for her to go out with Appellant. N.W., who trusted Appellant completely, thought it would be fine. C.M. agreed to go to a bonfire gathering with Appellant in Shippensburg.

Appellant picked C.M. up at N.W.'s house and drove her to the party. Along the way, they talked about their lives but did not discuss romance. They arrived at the party shortly after midnight. Approximately ten guests were drinking heavily and playing cards. C.M. drank a beer, a shot of vodka,

and smoked marijuana.  C.M. and Appellant left the party at sunrise, approximately 6:00 a.m.  Appellant drove C.M. back to N.W.'s house.  C.M. remembered briefly talking to Appellant in the car but fell asleep in the car shortly thereafter.

The next thing C.M. remembered was waking up and hearing N.W. and her husband coming down the stairs.  C.M. realized that her clothes were askew and her phone was missing.  Her genital area was wet, she smelled "funny" and felt sore, like one would after sexual intercourse.  It was approximately 10:00 a.m.  C.M. stated that between 6:00 a.m. and 10:00 a.m. she was completely unconscious.

C.M. began to panic and tried to explain her situation to N.W., but she had trouble constructing a coherent sentence.  She repeatedly told N.W., "Something is wrong."  When N.W. finally calmed her down, the two women called Appellant.  N.W. heard C.M. say something to the effect of, "I just want you to know I'm not okay with what you did."  C.M. asked Appellant if he understood the position he was putting her in.  He stuttered "yes" and hung up.

After C.M. left, N.W. found C.M.'s phone in the couch and answered when Appellant called.  She asked Appellant if he and C.M. had sexual intercourse, because C.M. seemed very upset and had not been awake.  Appellant said yes, and that, "I don't know what happened.  I've never done anything like that before, and I just should have stopped.  I should have just stopped and I feel really bad."

C.M. went to the hospital and had a rape kit completed. Christine Morgan, a sexual assault nurse examiner, performed the examination. There was no trauma to C.M.'s body, which is consistent with an unconscious victim who would have been relaxed. C.M.'s statement to Ms. Morgan was consistent with her trial testimony, except that C.M. did not admit to smoking marijuana as she was embarrassed. Police responded to the hospital and spoke with C.M. regarding the rape, secured the rape kit, and took her statement. The kit was not sent for processing because there was no dispute that sex had occurred.

Appellant was also interviewed by detectives; the interview was videotaped and later viewed by the jury. Appellant admitted he knew C.M.; went to the party with her; had a crush on her; had unprotected sex with C.M.; and ejaculated inside of her. However, he claimed he had intended to make sure C.M. got to bed safely. After covering her with a blanket, he looked at her for five minutes and thought she was asleep. When he started kissing her, he thought she enjoyed it. However, he acknowledged C.M. lay still and did not talk to him. Appellant then took his pants off and had oral and vaginal intercourse with C.M. He claimed that during the intercourse she moved so he "could get at her better" and that at one point she opened her eyes. He acknowledged that he had spoken with C.M. earlier and she was not interested in a relationship with him; and that during the phone call, she was upset with Appellant and tried to tell Appellant he had raped her. He admitted he felt terrible about what had happened.

Following trial, a jury convicted Appellant of rape of an unconscious person. Prior to sentencing, trial counsel filed a motion to withdraw, which was granted. Thereafter, the court appointed current counsel to represent Appellant. On September 7, 2016, Appellant was sentenced to sixty to one hundred twenty months of incarceration, followed by sixty months of probation. That same day, the trial court extended the time for filing post-sentence motions to ten days from the receipt of the trial transcripts. The transcripts were lodged September 16, 2016, and filed on September 21, 2016. Appellant timely filed a post-sentence motion on September 26, 2016.

When it came to the trial court's attention that Appellant's motion had not been acted upon within one hundred twenty days as required by Pa.R.Crim.P. 720(B)(3)(a), on March 8, 2017, the trial court deemed the motion to be denied by operation of law. Appellant timely filed a notice of appeal on April 3, 2017, within thirty days of the entry of that order. **See** Pa.R.Crim.P. 720(A)(2)(b). Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and the court issued a responsive opinion.

In this Court, Appellant's counsel has filed an **Anders** brief, asserting two issues Appellant might seek to raise: 1) whether the Commonwealth had presented sufficient evidence to convict Appellant of rape of an unconscious person, and 2) whether the verdict was against the weight of the evidence. **See** Appellant's Brief at 7.

When faced with a purported ***Anders*** brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw. ***Commonwealth v. Goodwin***, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). Prior to withdrawing as counsel on direct appeal under ***Anders***, counsel must file a brief that meets the requirements established by the Pennsylvania Supreme Court in ***Santiago***, namely:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361.

> Counsel also must provide a copy of the ***Anders*** brief to his client. Attending the brief must be a letter that advises the client of his right to: "(1) retain new counsel to pursue the appeal; (2) proceed pro se on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the ***Anders*** brief." ***Commonwealth v. Nischan***, 928 A.2d 349, 353 (Pa. Super. 2007), *appeal denied*, 594 Pa. 704, 936 A.2d 40 (2007).

***Commonwealth v. Orellana***, 86 A.3d 877, 879-880 (Pa. Super. 2014).

After determining that counsel has satisfied these technical requirements of ***Anders*** and ***Santiago***, only then may this Court "conduct an independent

review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." ***Commonwealth v. Flowers****,* 113 A.3d 1246, 1250 (Pa. Super. 2015) (citations and footnote omitted).

In the instant matter, Attorney Faust's ***Anders*** brief complies with the above-stated requirements. Namely, he includes a summary of the relevant factual and procedural history; he refers to the portions of the record that could arguably support Appellant's claims; and he sets forth his conclusion that Appellant's appeal is frivolous. He explains his reasoning and supports his rationale with citations to the record as well as pertinent legal authority. Attorney Faust avers he has supplied Appellant with a copy of his ***Anders*** brief and a letter explaining the rights enumerated in ***Nischan***. Accordingly, counsel has complied with the technical requirements for withdrawal. Thus, we may independently review the record to determine if the issues Appellant raises are frivolous and to ascertain if there are other non-frivolous issues he may pursue on appeal.

First, Appellant contends that the evidence was insufficient to convict him of rape of an unconscious victim. ***See*** Appellant's Brief at 12. Appellant contends the Commonwealth failed to prove the intercourse was not consensual. ***Id.*** He claimed that five drinks and marijuana was not enough to cause intoxication such that the victim could not consent, and that the victim merely "did not remember" the consensual intercourse ***Id.*** at 12-13.

We review a challenge to the sufficiency of the evidence as follows.

In determining whether there was sufficient evidentiary support for a jury's finding [], the reviewing court inquires whether the proofs, considered in the light most favorable to the Commonwealth as a verdict winner, are sufficient to enable a reasonable jury to find every element of the crime beyond a reasonable doubt. The court bears in mind that: the Commonwealth may sustain its burden by means of wholly circumstantial evidence; the entire trial record should be evaluated and all evidence received considered, whether or not the trial court's rulings thereon were correct; and the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence.

*Commonwealth v. Diggs*, 949 A.2d 873, 877 (Pa. 2008) (citations omitted).

A person commits the offense of rape when he engages in sexual intercourse with a complainant who is unconscious, or where he knows that the complainant is unaware that the sexual intercourse is occurring. *See* 18 Pa.C.S. § 3121(a)(3). Our Court has previously held that where a victim, "during at least portions of the assault, lacked knowledge or awareness of both her own sensations and external events, and was not in the normal waking state, the evidence was sufficient to support the finding that she was unconscious within the meaning of the statute." *See Commonwealth v. Erney*, 698 A.2d 56, 59 (Pa. 1997); *see also Commonwealth v. Diaz*, 152 A.3d 1040, 1045 (Pa. Super. 2016).

The evidence in the instant case was indeed sufficient to support the jury's verdict that, during the assault, the victim was unconscious within the meaning of the statute. C.M. testified that she had no recollection of what had happened to her between 6:00 a.m. and 10:00 a.m., when she woke up

to find her clothes in disarray and other signs that intercourse had been performed upon her. Appellant gave an inculpatory statement to the police in which he admitted he should have stopped when C.M. just "lay there." Appellant's argument that C.M.'s "movement" and eye opening during the assault indicated consciousness is also without merit, as we have held that intermittent unconsciousness satisfies the conditions of the statute so to make consent impossible. *See Erney*, 698 A.2d at 59; *Diaz*, 152 A.3d at 1045. Accordingly, the evidence was sufficient to support Appellant's convictions. *Id.*

Next, Appellant contends that the verdict was against the weight of the evidence because the victim's testimony was incredible. *Id.* at 13. Appellant points to the fact that the victim's story regarding the substances she had used changed from the initial report to the sexual assault nurse to her trial testimony rendered her testimony unbelievable. *Id.*

Initially, we note that claims regarding the weight of the evidence are within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. *See Commonwealth v. Houser*, 18 A.3d 1128, 1135-1136 (Pa. 2011). "The jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice." *Id.* Where the challenge to the weight of the evidence is predicated on the credibility of trial testimony,

> our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review.

***Commonwealth v. Trippett***, 932 A.2d 188, 198 (Pa. Super. 2007) (internal citations and quotations omitted); ***see also Commonwealth v. Hankerson***, 118 A.3d 415, 420 (Pa. Super. 2015) (noting that this Court may not re-assess the credibility of a witness' testimony when ruling on a weight of the evidence claim).

Here, C.M. testified before the jury and was accordingly subject to cross-examination. The jury additionally viewed Appellant's video-taped statement to detectives. It was the jury's role to evaluate this testimony and give it such weight as they saw fit, and they properly found that there was nothing inherently unreliable in C.M.'s testimony. **See** TCO at 17-18. Thus, the jury heard the evidence, evaluated it, and found C.M.'s testimony credible and Appellant's statement not credible, and we decline to re-assess the jury's credibility determination. **See Hankerson**, 118 A.3d at 420.

Attorney Faust identifies one additional issue Appellant seeks to raise, namely, whether the prosecutor committed misconduct by referring in closing argument to "a fixed line" that Appellant stepped over. **See** Appellant's Brief at 14. However, Appellant did not object to this remark at the time of trial and, accordingly, has waived the claim on appeal. **See**, **e.g.**, **Commonwealth v. Tedford**, 960 A.2d 1, 28–29 (Pa. 2008).

- 10 -

In short, we agree with Attorney Faust that Appellant's issues are frivolous. We have independently reviewed the record and find no other issues of arguable merit that he could pursue on appeal. Accordingly, we affirm Appellant's judgment of sentence and grant counsel's petition to withdraw.

Petition to withdraw granted. Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/4/2017