J-S61023-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| MATTHEW CRAIG | |
| Appellant | No. 3663 EDA 2016 |

Appeal from the Judgment of Sentence August 22, 2016
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0007335-2014

BEFORE:  LAZARUS, J., RANSOM, J., and PLATT, J.[*]

MEMORANDUM BY RANSOM, J.:                    **FILED NOVEMBER 16, 2017**

Appellant, Matthew Craig, appeals from the judgment of sentence of ten to twenty years of incarceration, imposed August 22, 2016, following a jury trial resulting in his conviction for robbery, theft by unlawful taking, and two counts of criminal conspiracy.[1]  We affirm.

On June 12, 2014, Glenn Collins was working at RadioShack, located at 9 East Lancaster Avenue in Ardmore, Montgomery County, Pennsylvania.  **See** Notes of Testimony (N.T.), 5/2/16, at 67-68.  Around 9:00 p.m., shortly before closing, Appellant and Latif Byard entered the store.  **Id.** at 69.  Appellant asked Mr. Collins whether the store sold Beats headphones and

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S. §§ 3701(1)(ii), 3921, 903, respectively.

whether a particular model was in stock. *Id.* at 69. While he looked, Mr. Byard locked the front door, and Appellant approached Mr. Collins with a gun. *Id.* at 69-70. Appellant ordered Mr. Collins into the basement and threatened to shoot him. *Id.* at 69-70, 74.

In the basement, Appellant and Mr. Byard forced Mr. Collins to lie face down on the floor while they searched his pants and took his keys, cell phone, and cash. *Id.* at 74-75. They obtained the lockbox key from Mr. Collins and filled their bags with cellular phones, Beats headphones, and video game systems. *Id.* at 75, 77. Appellant and Mr. Byard left Mr. Collins in the basement and fled the scene. *Id.* at 76. Mr. Collins called 911. *Id.* at 77. The value of the stolen merchandise totaled $20,635.52. *Id.* at 77.

Police officers responded to the scene and began their investigation. *See* N.T., 5/3/16, at 142-45. Mr. Collins was unable to make a positive identification of Appellant after viewing a photo array, although he later identified Appellant at the preliminary hearing and at trial. *See* N.T., 5/2/16, at 71-73. The store did not have security cameras. *See* N.T., 5/2/16, at 68. Despite these setbacks, Mr. Byard was arrested on June 14, 2014, and his cell phone was seized by police. *See* N.T., 5/3/16, at 167. He had exchanged phone calls and Facebook messages with Appellant prior to the robbery. *See* N.T., 5/3/16, at 177-85.

Appellant was arrested at 6135 Marston Street on June 19, 2014, and his cell phone seized and examined by police. *See* N.T., 5/3/16, at 151. This examination revealed that on May 21, 2014, Appellant had received a text

- 2 -

message from a contact named "Karl" that read, "I sold more phones." *Id.* at 185-86. Appellant also called "Karl" before and after the instant robbery. *See* N.T., 5/3/16, at 177-85. *See* N.T., 5/3/16, at 142-45. Based upon a generated cell phone site map of Appellant's number, police were able to determine that on the night of the robbery, he had initially made connections to cell phone towers near his house. *Id.* at 231-274. Appellant then began making different site connections *en route* to the scene of the robbery. *Id.* Triangulation of Appellant's cell phone showed that he was within close vicinity of the RadioShack because his phone made eight site connections between 8:48 p.m. and 9:10 p.m. *Id.* at 231-41. The phone did not connect again until 9:29 p.m. *Id.* at 241. At that time, it "pinged" in the vicinity of 6135 Marston Street in Philadelphia, Pennsylvania, the location at which Appellant was later arrested. *Id.*

On May 27, 2015, Mr. Byard entered a negotiated guilty plea to conspiracy to commit robbery. *See* N.T., 5/27/15, at 1-12. Mr. Byard testified that on June 12, 2014, he and Appellant committed the robbery for which they were charged. *Id.* at 6. Following the entry of his plea, Mr. Byard was sentenced to time served to twenty-three months of incarceration and five years of consecutive probation. *Id.* at 12.

Prior to trial, the Commonwealth filed a motion *in limine* to introduce a text message Appellant had sent to "Karl" on May 21, 2014, three weeks prior to the robbery, reading "I sold more phones." *See* N.T., 5/3/16, at 136-37. Appellant was also accused of committing robberies of two Philadelphia

RadioShacks on May 19, 2014, and May 31, 2014, respectively. **See** Trial Court Opinion (TCO), 5/22/17, at 19; **see also** Commonwealth's Mot. in *Lim.*, 4/27/16, at 1. Ultimately, the text message was admitted, but evidence of the Philadelphia robberies was excluded by the trial court. **See** TCO at 19. Although Appellant originally objected to the admission of the text messages as evidence of prior bad acts, at trial, he requested that the court not read a curative instruction. **See** N.T., 5/3/16, at 137, 206.

In May 2016, Appellant's case proceeded to trial by jury. At trial, Mr. Byard admitted to committing the Ardmore robbery but denied Appellant's involvement. **See** N.T., 5/2/16, at 110-121. The Commonwealth impeached Mr. Byard with his prior testimony. **Id.** at 117-121. Both Appellant and the Commonwealth stipulated that phones recovered from Appellant and his co-defendant at the time of their arrests had particular international mobile equipment identifier ("IMEI") numbers which belonged to Appellant and Mr. Byard. **See** TCO at 16.

The jury convicted Appellant of the above charges and acquitted him of an additional count of robbery. The Commonwealth filed a notice of intent to seek a ten-year mandatory sentence due to Appellant's conviction for a second and subsequent violent offense. On June 9, 2016, the court sentenced Appellant to two concurrent terms of ten to twenty years of incarceration. Appellant filed post sentence motions, which were denied.

Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal.[2] The court issued a responsive opinion.

On appeal, Appellant raises the following issues for our review, which we have reordered for ease of analysis:

> 1. The trial court erred in admitting into evidence a text message stating "I sold more phones[,"] which was sent by the appellant three weeks prior to the incident."
>
> 2. The verdict was against the weight of the evidence.

Appellant's Brief at 7.

First, Appellant claims that the court erred in admitting into evidence a text message sent to "Karl" from Appellant which read, "I sold more phones." **See** Appellant's Brief at 36. Appellant argues that because the message was sent three weeks prior to the robbery, the text message had nothing to do with the facts and circumstances surrounding the case. **Id.** Thus, Appellant concludes that the message constitutes inappropriate evidence of prior bad acts. **Id.**

We examine a trial court's decision concerning the admissibility of evidence for an abuse of discretion. **Commonwealth v. Dengler**, 890 A.2d 372, 379 (Pa. 2005). Regarding the admissibility of prior bad acts,

> [g]enerally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in

---

[2] Appellant failed to timely appeal; however, following correspondence by counsel, the court reinstated his appellate rights *nunc pro tunc* on November 10, 2016.

conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

**Commonwealth v. Sitler**, 144 A.3d 156, 163 (Pa. Super. 2016) (*en banc*) (quoting **Commonwealth v. Sherwood**, 982 A.2d 483, 497 (Pa. 2009)).

At argument, the Commonwealth averred that Appellant was in contact with "Karl" at the time of the Philadelphia robberies. **See** TCO at 20-21. The Commonwealth also noted that Appellant had called "Karl" before and after the instant robbery. In this context, the Commonwealth suggested that the text messages demonstrated motive and intent, as it was likely the phones were procured for profit. **Id.** The court admitted this evidence for the limited purpose of showing motive and intent, without mention of any prior robberies, and offered Appellant a curative instruction, which he first accepted, but later declined. **Id.** at 22.

Such evidence is proper and relevant in a criminal case. **See**, **e.g.**, **Commonwealth v. Tedford**, 960 A.2d 1, 42 (Pa. 2008) (noting that evidence to prove motive, intent, plan, design, ill will, or malice is always relevant in criminal cases). Appellant admitted the phone belonged to him. He sent the message in the midst of a string of similar robberies during which cell phones were stolen. The court admitted the evidence for a limited purpose and without reference to the Philadelphia robberies. Thus, we cannot conclude

that the court abused its discretion in admitting this text message. ***See Sitler***, 144 A.3d at 163.

Next, Appellant claims the verdict was against the weight of the evidence. ***See*** Appellant's Brief at 18. Essentially, Appellant suggests that the verdict was "unfairly caused" by the court's allowance of Pa.R.E. 404(b) evidence, namely, that Appellant had sent a text message saying, "I sold more phones." ***Id.*** at 26. Appellant avers that this testimony caused the jury to overlook "weak" testimony such as the complainant's failure to identify Appellant, Mr. Byard's recantation of his guilty plea testimony, and a police officer's testimony regarding cell phone tower "pings." ***Id***. at 18.

The law regarding weight of the evidence claims is well-settled.

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

***Commonwealth v. Houser***, 18 A.3d 1128, 1135-36 (Pa. 2011) (citations and internal quotation marks omitted); ***see also Commonwealth v. Hankerson***, 118 A.3d 415, 420 (Pa. Super. 2015) (noting that this Court may not re-assess the credibility of a witness' testimony when ruling on a weight

of the evidence claim). Here, the verdict was not against the weight of the evidence. We have previously determined that the text message was not admitted in error. Thus, we will examine Appellant's claims that the jury placed improper weight on other facts.

First, Appellant argues that the verdict was against the weight of the evidence due to the complainant's failure to identify Appellant from a photo array. *See* Appellant's Brief at 18. Mr. Collins consistently and in great detail testified to the events of the robbery, and he made identifications of Appellant at the preliminary hearing and at trial. Although Appellant argues that this testimony should not have been credited, he does not challenge the court's cautionary instruction to the jury and did not challenge the instruction given to the jury at trial. *See* TCO, at 12-13. At trial, the court instructed the jury that:

> There is a question of whether this identification is accurate. A victim or other witness can sometimes make a mistake when trying to identify the criminal. If certain factors are present, the accuracy of identification testimony is so doubtful that a jury must receive it with caution. Identification testimony must be received with caution if the witness, because of a bad position or lighting or other reasons, did not have a good opportunity to observe the criminal or if he did not identify the [Appellant] when shown photographs by the Lower Merion Detective Division before trial.
>
> If you believe that one or more of these factors are present, then you must consider with caution [Victim's] testimony identifying the [Appellant] as the person who committed the crime. If, however, you do not believe that at least one of these factors is present, then you need not receive the testimony with caution and you may treat it like any other testimony.

You should consider all evidence relevant to the question of who committed the crime, including the testimony of [Victim], as well as any facts and circumstances from which identity or nonidentity of the criminal may be inferred. You cannot find the [Appellant] guilty unless you are satisfied beyond a reasonable doubt by all of the evidence, direct and circumstantial, not only that the crime was committed, but that it was the [Appellant] who committed it.

***See*** TCO at 12-13.

"The jury is presumed to have followed the court's instructions." ***See Commonwealth v. Chmiel***, 30 A.3d 1111, 1147 (Pa. 2011). Accordingly, it is the jury, as fact-finder and with a proper cautionary instruction, which could make a credibility determination regarding the identification testimony of Mr. Collins, and we decline to re-assess the jury's credibility determination. ***See Hankerson***, 118 A.3d at 420.

Next, Appellant claims the verdict was against the weight of the evidence due to Mr. Byard's recantation of his earlier testimony. Mr. Byard testified at his guilty plea hearing that he committed the robbery with Appellant. ***See*** N.T., 5/2/16, at 115-120. Despite Mr. Byard's recantation at trial, he was impeached with his prior testimony. It was the jury's role to evaluate this conflicting testimony and give it such weight as they saw fit, and we decline to reassess that credibility determination on appeal. ***See Hankerson***, 118 A.3d at 420.

Finally, Appellant argues the jury put improper weight on Detective Jean Morrison's testimony regarding a "cell site map" she had generated for Appellant's phone for the night of the robbery. ***See*** N.T., 5/3/16, at 227-254. Detective Morrison was admitted as an expert, and Appellant did not object to

her admission as an expert: accordingly, he has waived his challenge to her expert opinion. *See* N.T., 5/3/16, at 220-21; *see* Pa.R.A.P. 302 (objections not raised before the trial court are waived for purposes of appeal). Appellant now characterizes this testimony as "junk science." *See* Appellant's Brief at 30. Appellant attempts to equate the alleged unreliability of other commonly admitted forensic evidence, such as DNA and bite mark evidence, to the cell phone tower analysis at issue in this case. *Id.* at 30-34. However, Appellant does not indicate why the proffered evidence in the instant case was inherently unreliable or incorrect. *Id.* Moreover, Appellant vigorously challenged the testimony of Detective Morrison during cross-examination, covering many of the issues he now raises on appeal. Thus, the jury heard the evidence, evaluated it, and found Detective Morrison's testimony credible, and we decline to re-assess the jury's credibility determination. *See Hankerson*, 118 A.3d at 420.

We cannot agree with Appellant that the jury's verdict was so contrary to the evidence as to shock one's sense of justice. *See Houser*, 18 A.3d at 1136. The jury, in their role as fact-finder, has heard, considered, and subsequently rejected Appellant's arguments. Thus, we discern no abuse of the trial court's discretion in rejecting Appellant's weight claim. *See Houser*, 18 A.3d at 1136.

Judgment of sentence affirmed. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 11/16/2017*