J-S27041-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P.65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEROY CALBERT | : | |
| | : | |
| Appellant | : | No. 3269 EDA 2019 |

Appeal from the Order Dated October 10, 2019
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0002065-2013,
CP-23-CR-0005772-2013

BEFORE: SHOGAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED JUNE 22, 2020**

Appellant Leroy Calbert ("Calbert") appeals from the Order entered in the Court of Common Pleas of Delaware County on October 10, 2019, following this Court's reversal of the trial court and remand for an evidentiary hearing in March of 2019, reinstating the Judgment of Sentence of an aggregate term of ten (10) years to twenty (20) years in prison which had been imposed after he entered negotiated guilty pleas to various drug charges on two separate criminal dockets in 2013.[1] After a careful review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Appellant previously filed separate notices of appeal from each of the two dockets, CP-23-CR-5772-2013 and CP-23-CR-2065-2013, and this Court consolidated the matters on appeal for ease of disposition. **Commonwealth v. Calbert**, No. 1436 EDA 2018, 2019 WL 1057181, at *1, n. 1 (Pa.Super. Mar. 5, 2019). **See** Pa.R.A.P. 513 (consolidation of multiple appeals); **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018).

This Court set forth the relevant facts and extensive procedural history herein as follows:

On February 27, 2013, at approximately 6:30 a[.]m[.], members of the Delaware County Drug Task Force in possession of Search Warrant number 65-0125-13 entered the residence of ... [] Calbert located at 703 Pine Street, Darby, PA 19023, and conducted a search and seizure of controlled substances. [Calbert] was present during the search and was located lying in bed in the front second floor bedroom. Recovered from the residence as a result of the search were: a scale with residue; packing material with gloves and a razor; 1 empty pill bottle; several pill bottles containing a total of 243 assorted pills; 282 small plastic bags each containing crack cocaine; 4 large plastic bags each containing marijuana; 2 boxes of ammunition; a holster; a Ruger P95 [s]emi-automatic 9[ ]mm loaded with 9 live rounds in the magazine and 1 round in the chamber; a Rossi [.]357 Magnum revolver loaded with 6 live rounds; a shoe box containing $128 in U.S. currency; and $473 in U.S. currency from [Calbert's] pocket.

* * *

On September 6, 2013, at approximately 3:50 p[.]m[.], a search warrant was served at 515 Chester Pike, Norwood, PA 19072. Prior to entering the residence, officers stopped [Calbert] in a silver Ford Fiesta in a rear parking lot. As officers stopped [Calbert] he discarded numerous oxycodone hydrochloride pills. Officers additionally searched [Calbert's] vehicle and recovered a clear plastic bag containing 7 small bags of cocaine, several drug tally sheets, and $608 in U.S. currency. At approximately 3:53 p[.]m[.], the officers searched the residence at 515 Chester Pike. Seized from the residence were drug paraphernalia and several clear plastic bags containing cocaine residue. Seized from the residence during the search were: drug paraphernalia, 33.8 grams of cocaine; 5.9 grams of marijuana; two plastic bags containing 891 oxycodone hydrochloride pills; several pill bottles containing 46 oxycodone hydrochloride pills; and $3644 in U.S. currency.

Calbert was arrested and charged with various drug and firearm offenses for both criminal episodes. On November 12, 2013, he entered counseled negotiated guilty pleas, on both cases, to possession of a controlled substance, criminal conspiracy

to possession of a controlled substance, and possession of drug paraphernalia. He was sentenced to an aggregate term of 10-20 years in prison. On December 5, 2013, Calbert filed a *pro se* notice of appeal, along with a *pro se* request for leave to withdraw his guilty plea and a motion to withdraw his guilty plea. The court appointed counsel to represent Calbert, but did not address the withdrawal motion. On appeal, Calbert claimed that his plea was unknowing because he was unaware that the sentences at each docket were going to be imposed consecutively. Our Court affirmed Calbert's judgment of sentence, finding his claim waived for failing to preserve it prior to sentencing, at sentencing, or in a timely post-sentence motion. ***Commonwealth v. Calbert***, 113 A.3d 358 (Pa. Super. filed Nov. 25, 2014) (unpublished memorandum).

On February 3, 2016, Calbert filed a timely *pro se* PCRA petition; PCRA counsel was appointed and was later permitted to withdraw. New counsel was appointed; however, Calbert elected to proceed *pro se*. The court held a ***Grazier***[2] hearing and granted Calbert's *pro se* request. On October 16, 2016, the court issued Pa.R.Crim.P. 907 notice of its intent to dismiss Calbert's petition without a hearing. Calbert responded to the notice; however, the court dismissed the petition on January 9, 2017. Calbert filed a *pro se* notice of appeal raising fourteen issues. On appeal, our Court concluded that five issues were waived because Calbert did not raise them in his Pa.R.A.P. 1925(b) statement and also failed to preserve them "before trial, at trial, during unitary review, on appeal, or in a prior state post-conviction proceeding." 42 Pa.C.S.A. § 9544(b). The Court also found Calbert's legality of sentence issue waived on appeal for failing to develop the claim. Finally, with regard to Calbert's ineffectiveness of direct appeal counsel claims, the Court found them meritless. However, with regard to Calbert's issues relating to plea counsel's alleged ineffectiveness, the Court vacated the PCRA order and remanded the case for further proceedings, stating:

> [O]n direct appeal we questioned plea counsel's status and further questioned why [Calbert's] *pro se* filings were not forwarded to [plea counsel]. Neither the PCRA court nor the Commonwealth directly addresses this claim. Rather, both assert that the guilty plea proceedings establish that Guilty Plea Counsel's

---

[2] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998) (stating a hearing is required before an appellant who wishes to proceed *pro se* may do so).

representation was effective. As correctly recognized by [Calbert], however, if counsel is found to have ignored a petitioner's request to file an appeal, or did not consult with him regarding same, the petitioner is entitled to the reinstatement of his appeal rights *nunc pro tunc* and no merit analysis of any other issues occurs.

***Commonwealth v. Calbert***, 179 A.3d 530 (Pa. Super. filed Oct. 2, 2017) (unpublished memorandum).

Upon remand, Calbert requested that the trial judge recuse. The judge acquiesced to that request and the Honorable Mary Alice Brennan was assigned to the case; new PCRA counsel was appointed. Counsel filed an amended PCRA petition on January 3, 2018, claiming that plea counsel failed to file motions to withdraw the guilty pleas despite Calbert's timely request to do so. The Commonwealth agreed that plea counsel had failed to file the subject motions and agreed that Calbert was entitled to PCRA relief in the form of permission to file post-sentence motions *nunc pro tunc*.

On February 1, 2018, the court granted Calbert's petition and reinstated his right to file post-sentence motions. On February 9, 2018, counsel filed post-sentence motions raising various claims of ineffectiveness of "trial/plea counsel … prior to and during the plea and post[-]sentence time period," resulting in a plea that was not knowing, intelligent and voluntary. Post-Sentence Motions, 2/9/18, at 4-6. On April 9, 2018, the court dismissed the motions without a hearing. On April 18, 2018, Calbert filed a motion for reconsideration of the court's denial; the court denied reconsideration on April 26, 2018, stating that after "having twice reviewed the guilty plea transcripts and other evidence produced herein, the court [hereby] finds **no manifest injustice** and therefore [Calbert's] [m]otion is [denied]." Order, 4/26/18 (emphasis in original). Calbert filed a timely notice of appeal and court-ordered Rule 1925(b) concise statement of errors complained of on appeal

Calbert presents one issue for our consideration:

Whether the trial court abused its discretion and committed an error in denying [Calbert's] post[-]sentence motions, without permitting [Calbert] the opportunity to present witnesses and submit evidence to substantiate the claims of ineffective assistance of trial/plea counsel at an evidentiary hearing, when the Superior Court had specifically ordered the trial court to conduct an evidentiary hearing on those issues.

Appellant's Brief, at 6.

- 4 -

*Commonwealth v. Calbert,* No. 1436 EDA 2018, 2019 WL 1057181, at *1–

3 (Pa. Super. Mar. 5, 2019) (citation to trial court opinion omitted).

Upon consideration of Calbert's issue, this Court remanded the matter

for a second time. In doing so, we reasoned as follows:

> Accordingly, we conclude that Calbert's claims involving counsel's stewardship (both before and after the entry of his plea), which may have affected the voluntariness of his plea need to be assessed on a full record, not a cold record. This can only be accomplished by holding a hearing where trial/plea counsel testifies on such matters. Accordingly, we reverse Calbert's judgments of sentence and remand for a hearing on the merits of his post-sentence motions, consistent with the dictates of this decision.

*Id*. at *4. (footnotes omitted). We further directed that if following the

hearing the trial court did "not believe that Calbert is entitled to withdraw his

plea, then it shall reinstate his original judgment of sentence." *Id*. at n. 7.

The trial court held a hearing on September 4, 2019, at which time both

he and plea counsel, Fincourt Shelton, testified on the issue of whether

counsel had fully explained the negotiated plea deal to Calbert. However,

Calbert initially stated he did not wish to take the stand "[b]ecause the reason

I am here is for me to make a record. It is for Mr. Shelton to be here to

testify, not me." N.T. 9/4/19, at 7-8. Calbert's appellate counsel, Scott

Galloway, colloquied him and advised him to testify, at which time Calbert

reiterated he would not, despite Attorney Galloway's advice to the contrary.

*Id*. at 8-9.

Attorney Shelton testified he represented Calbert up to and including the guilty plea procedure. *Id*. at 12. Mr. Shelton explained that the District Attorney (D.A.) had agreed upon a sentence for the two drug cases that was substantially lower than that which Appellant may have received if the matter went to trial. The offer was for a six (6) year prison term on one case, and four (4) years on the other, for a total of ten (10) to twenty (20) years' imprisonment. He believed he and the D.A. had discussed Calbert's desire for the sentences to run concurrently, but the D.A. would not agree to that. *Id*. at 13.

At the beginning of the November 12, 2013, hearing Calbert indicated on the record that he did not want to accept the Commonwealth's offer, and the trial court offered to continue the matter; Attorney Shelton requested that the trial court provide him with a few minutes to speak to his client. *Id*. After the two talked, Calbert indicated he was prepared to enter a guilty plea. *Id*. at 14. During their conversation, Mr. Shelton told Calbert that if he did not accept the plea, he would file a motion to withdraw as his counsel. Attorney Shelton indicated he did so because he felt the deal was a great one. Calbert faced twenty (20) to forty (40) years in prison if convicted of the crimes; Attorney Shelton had known Calbert for "some time" and did not want to be the one to represent and see him go to jail for such a lengthy time, which would amount to a life sentence for him, a man approaching fifty years of age. *Id*. at 14-16, 31, 35, 53. Attorney Shelton remembered that Calbert asked

him to file something as the two left the courtroom, but Attorney Shelton told Calbert he would not file anything as he was "perturbed" at the moment. *Id*. at 16.

The Commonwealth marked the guilty pleas and statements of post-sentence rights prepared on November 12, 2013, for the record and proceeded to question Attorney Shelton regarding the same. *Id*. at 17. Several mandatory-minimum sentences were applicable in case number 2065 of 2013 if Calbert did not plead guilty. *Id*. at 25-26. Mr. Shelton recalled advising Calbert that he would be pleading to a total, consecutive sentence of ten (10) years to twenty (20) years. *Id*. at 27. Calbert understood the sentence, but kept insisting he wanted the sentences "to run together" and "concurrent." *Id*. at 27-29. The total length of the negotiated sentence was stated on the record. *Id*. at 29-30. Calbert was made aware of the total range of sentences he was facing and of his right to a jury trial. *Id*. at 35.

Despite his earlier representations, Calbert chose to testify at the September 4, 2019, hearing. He stated he had pled guilty because of Attorney Shelton's statement that he would seek to withdraw as his counsel if he chose not to. *Id*. at 37. He stated the two never discussed whether the sentences would run consecutively or concurrently and that he asked Attorney Shelton to file an appeal for him but he refused. *Id*. at 39-40. Although he was shown on cross-examination the multiple places in the sentencing transcript where his sentence was explained to him and he stated he understood, Calbert

continued to insist he was unaware of the sentence he ultimately received. *Id*. at 41-46. He also testified that Attorney Shelton did not inform him of the potential prison time he faced if convicted of the crimes, tell him he was innocent until proven guilty, or that he had a right to a jury trial. *Id*. at 47-48, 50. Calbert attempted to explain that while he initialed the page of the plea agreement that indicated he was satisfied with Attorney Shelton's representation because he, in fact, was at that time, he was not satisfied with the representation when he pled guilty. *Id*. at 49.

On October 10, 2019, the trial court issued findings of fact and concluded Calbert was not entitled to relief. On that same date, it entered its Order from which the instant appeal was timely filed.

In his brief, Appellant presents the following issue for our review:

> Was the [t]rial [c]ourt in error in denying [Calbert's] Motion requesting that he be permitted to withdraw his Guilty Plea in that the negotiated Guilty Plea between the Commonwealth of Pennsylvania and [] Calbert's Attorney was not fully explained to him nor did he understand the same?

Brief for Appellant at 9.

Calbert stresses that despite the trial court's willingness to grant a continuance for Calbert to consider the plea agreement, after a brief conversation with Attorney Shelton, at which time Mr. Shelton indicated that if Calbert did not agree to enter the pleas he would no longer represent him, Calbert entered the plea on November 12, 2013, and received the negotiated sentence. Calbert asserts this evinces "an improper inducement as to the

entry of the guilty pleas made on that date." Brief for Calbert at 24, 40.

Calbert also states that he told counsel he believed the sentences were to be concurrent, not consecutive, and requested that counsel file a motion to withdraw the pleas, although counsel refused. *Id*. at 40.

This Court has explained that:

the decision to allow a defendant to withdraw a plea post-sentence is a matter that rests within the sound discretion of the trial court. Moreover, a request to withdraw a guilty plea after sentencing is subject to higher scrutiny since courts strive to discourage the entry of guilty pleas as sentence-testing devices. Therefore, in order to withdraw a guilty plea after the imposition of sentence, a defendant must make a showing of prejudice which resulted in a manifest injustice. A defendant meets this burden only if he can demonstrate that his guilty plea was entered involuntarily, unknowingly, or unintelligently.
    Once a defendant enters a guilty plea, it is presumed that he was aware of what he was doing. Consequently, defendants are bound by statements they make during their guilty plea colloquies and may not successfully assert any claims that contradict those statements.

*Commonwealth v. Culsoir*, 209 A.3d 433, 437 (Pa.Super. 2019) (citations omitted).

"In determining whether a plea is valid, the court must examine the totality of circumstances surrounding the plea. Pennsylvania law presumes a defendant who entered a guilty plea was aware of what he was doing, and the defendant bears the burden of proving otherwise." *Commonwealth v. Hart*, 174 A.3d 660, 665 (Pa.Super 2017) (quotation marks and citation omitted).

In addition, a fact-finder is free to believe all, part, or none of the evidence presented. *Commonwealth v. Mosley*, 114 A.3d 1072, 1087

(Pa.Super. 2015) (citations omitted). This Court cannot assume the task of assessing the credibility of the witnesses or evidence presented at trial, as that task is within the exclusive purview of the fact-finder. ***Commonwealth v. Hankerson***, 118 A.3d 415, 420 (Pa.Super.2015) (citations omitted).

Here, the trial court addressed Appellant's claim as follows:

> Addressing the specific issues to be resolved on remand, after hearing, the court believes Calbert was fully aware that the aggregate 10 to 20 year sentence he was agreeing to was composed of sentences in two different cases that were to run consecutive. Several times during the negotiations prior to the guilty plea, Calbert attempted through his attorney to get the District Attorney to "sweeten the deal" by running the sentences concurrent. The District Attorney steadfastly refused. Eventually Calbert understood that he had to make a difficult choice between two, for him, disastrous outcomes. He could take the plea and serve ten years or go to trial and possibly serve double if convicted. His attorney had already advised him his defense was weak and conviction likely. It is also true for that reason there was friction between Calbert and plea counsel. Counsel admitted to being frustrated because he thought he obtained for Calbert the best deal possible under the circumstances. Counsel did not wish to see Calbert make a mistake that might cost him an additional ten years. Plea counsel testified that he believed that if Calbert had to serve the additional time it would amount to a life sentence based on his age.
>
> The plea court sensed Calbert's hesitation and offered him a three week continuance to think about it. Calbert could have taken advantage of the offered continuance had he desired to. Calbert had prior contact with the criminal justice system and had understanding of what was going on. Instead, after consultation with his attorney, this court believes Calbert knowingly and intentionally made a choice entered into the negotiated guilty plea.
>
> It might be true that soon after Calbert completed the negotiated guilty plea and was sentenced, he changed his mind. The law does not require that the defendant be pleased with the outcome of his decision to enter a guilty plea. Disappointment in the sentence imposed does not represent manifest injustice. All

- 10 -

that is required is that the defendant's decision to plead guilty be knowingly, voluntarily and intelligently made. The court finds that here, Calbert's decision to plead guilty was knowingly, voluntarily and intelligently made.

The allegation that Calbert was under pressure at the time he entered a guilty plea does not invalidate the plea. There is no allegation Calbert was mentally or physically incompetent at the time the plea was entered.

Lastly, the court did not find Calbert's testimony to be credible. Determination of the credibility of a witness is within the exclusive province of the fact finder. **Commonwealth v. Izurieta**, 171 A.3d 802 (Pa. Super. 2017). The court found Calbert's testimony to be self-serving and untruthful.

Trial Court Opinion, 12/30/19, at 2-3.

Following on our review of the entire record, we discern no abuse of discretion by the trial court as fact-finder. Appellant is bound by his statements during the guilty plea colloquy, which demonstrate that he knowingly entered his plea. **Commonwealth v. Brown**, 48 A.3d 1275, 1277 (Pa.Super. 2012) (noting that a defendant is bound by the statements made during the plea colloquy, and a defendant may not later offer reasons for withdrawing the plea that contradict statements made when he pleaded guilty). Further, the totality of the circumstances surrounding the plea, coupled with the testimony presented at the September 4, 2019, hearing supports the trial court's conclusion that Calbert knowingly, voluntarily, and intelligently entered his plea, and Calbert has failed to carry the burden of proving otherwise. **See Hart**, 174 A.3d at 664-65.

As detailed above, the trial court offered Calbert additional time in which to consider his plea, and he chose not to take advantage of that offer. Calbert

admittedly signed a written plea form which apprised him of the rights he would forego in entering his guilty plea. Counsel also administered a thorough oral plea colloquy at which time Calbert was made aware numerous times that his negotiated sentences for each crime would run consecutively, and he was told of the possible aggregate sentence he may receive were he to be convicted of the crimes. Calbert stated he understood the proceedings and was satisfied with counsel's representation of him. N.T., 11/12/13, at 4-19, 25-33. Thus, based on the foregoing, Calbert's claim that his guilty plea was involuntary, unintelligent, or unknowing lacks merit, as it was belied by both the written guilty plea statement and oral plea colloquy as well as his own admissions at the September 4, 2019, hearing.

Calbert's present allegations to the contrary, Attorney Shelton's statement that he would seek to withdraw as counsel if he did not take the plea did not somehow nullify Calbert's representations to the trial court during his plea colloquy that he was entering the plea of his own free will and had not been threatened or pressured to do so. Accordingly, Calbert obtains no relief, and we affirm the trial court's Order reinstating his original judgment of sentence.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/22/20