J-S56019-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.N.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: N.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1717 EDA 2019 |

Appeal from the Decree Entered June 10, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000362-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: A.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: N.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1718 EDA 2019 |

Appeal from the Order Entered June 10, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0002136-2017

BEFORE: PANELLA, P.J., OLSON, J., and NICHOLS, J.

MEMORANDUM BY OLSON, J.: **FILED DECEMBER 20, 2019**

Appellant N.L. ("Mother") appeals from the decree entered on June 10, 2019, granting the petition filed by the Philadelphia Department of Human Services ("DHS") to involuntarily terminate her parental rights to her minor child, A.N.L., a/k/a A.L., ("Child") a female born in July 2010, pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b), and the order changing the permanency goal for Child to adoption pursuant to the Juvenile

Act, 42 Pa.C.S. § 6351. On this direct appeal, Mother's counsel, Attorney John M. Hayburn ("Counsel"), filed a petition for leave to withdraw as counsel and an accompanying brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), and **In re V.E.**, 611 A.2d 1267, 1275 (Pa. Super. 1992) (extending **Anders** briefing criteria to appeals by indigent parents represented by court-appointed counsel in involuntary termination matters). Upon review, we grant Counsel leave to withdraw and affirm.

The trial court discussed the facts and procedural history of the instant matter as follows:

On July 21, 2017, Child's [P]aternal [G]randmother began caring for Child by family arrangement after DHS visited [Grandmother's] home and determined [it] to be appropriate. On July 21, 2017, [DHS] received a General Protective Services ("GPS") report which alleged that Mother was diagnosed with schizoaffective disorder. Mother had disclosed to DHS prior to July 21, 2017[,] that she suffered from mental illness and that to deal with stress[,] she cut and harmed herself. She also related that she broke a lava lamp over her head.

On August 23, 2017, the Community Umbrella Agency ("CUA") held a Single Case Plan ("SCP") meeting. The objectives identified for Mother were[:] (1) to attend intensive outpatient drug and alcohol treatment and follow all recommendations; (2) to refrain from using any illegal substance; (3) to continue mental health services at the Tree of Life Agency; (4) to take medications for anxiety, [attention deficit hyperactive disorder ("ADHD")], depression, panic attacks[,] and mood swings; (5) to have [a] psychiatric medication check monthly; (6) to continue to explore proper housing; [and] (7) to have weekly supervised visits with [] Child.

On May 13, 2019, DHS filed the underlying [p]etition[] to [t]erminate [p]arental [r]ights because Mother was unable to

maintain her [SCP] objective[s]. Specifically, Mother [] tested positive on court ordered drug screens and was unable to secure stable housing. Mother [] also failed to address her mental health issues.

*See* Trial Court Opinion, 7/23/19, at 1-8 (internal citations to the record omitted).

The trial court held a hearing on the petition on June 10, 2019.[1] At the hearing, the CUA representative, Michele Jackson, testified. *See* N.T., 6/10/19, at 13-31. Jackson explained that Mother did not meet any of her SCP objectives. *Id.*

Jackson testified that Mother was discharged from drug treatment in April 2018 and March 2019 after failing to attend treatment sessions. *Id.* at 16. Additionally, Jackson explained that Mother failed to participate in court-ordered random drug screens, and that, when Mother was finally tested in June 2019, she tested positive for marijuana and opiates. *Id.* at 17-21.

Jackson also noted that Mother failed to obtain stable housing. *Id.* at 13-14, and 25. Jackson testified that Mother was referred to the Achieving Reunification Center ("ARC") in March 2019 to assist her in parenting classes and finding stable housing, but Mother never reported for intake. *Id.* at 25. Per Jackson, on a previous occasion, Mother was referred for housing but was discharged for non-compliance. *Id.* Additionally, Jackson discussed Mother's visits with Child. *Id.* at 21-22. Jackson stated that Mother's visits did not

---

[1] Attorney James King was appointed to represent the Child as her legal interests counsel and Attorney Lee Kuhlmann was appointed as guardian *ad litem* ("GAL") to represent Child's best interests. *See In re Adoption of L.B.M.*, 161 A.3d 172, 179-180 (Pa. 2017).

progress beyond supervised visits; the visits had to be changed to therapeutic visits after Mother "coached" Child regarding Paternal Grandmother. *Id.* at 21-22 and 28.

Lastly, Jackson discussed Child's placement. She testified that Child has been in the care of Paternal Grandmother for over two years and that Paternal Grandmother meets Child's physical, medical, and educational needs. *Id.* at 11-12, 27-28. Moreover, Jackson explained that while Mother lives on the same street as Paternal Grandmother, a stay-away order against Mother has been obtained because Mother consistently makes unfounded allegations that Child is physically and verbally abused by Parental Grandmother. *Id.* at 27-30. Jackson testified that although Child is glad to see Mother, the bond is not a parental bond, that Child wishes to be adopted by Paternal Grandmother, and Child would not suffer irreparable harm if Mother's parental rights were terminated. *Id.* at 29-30. Jackson testified it is in Child's best interests to be adopted. *Id.* at 30. Following Jackson's testimony, Attorney Kuhlmann, Child's GAL, stated on the record that Child confirmed she wished to be adopted by her foster parent. *Id.* at 31.

At the conclusion of the hearing, the court terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). This timely appeal followed.[2]

_____

[2] Mother filed two notices of appeal on June 24, 2019, separately listing each docket number. *See Commonwealth v. Walker*, 185 A.3d 969, 977 (Pa.

On August 22, 2019, Counsel filed an **Anders** brief and a petition to withdraw as counsel. Therefore, before reviewing the merits of this appeal, this Court must first determine whether counsel has fulfilled the necessary procedural requirements for withdrawing as counsel. **See Commonwealth v. Flowers**, 113 A.3d 1246, 1248–1249 (Pa. Super. 2015) (citation omitted).

"In order to withdraw from appellate representation pursuant to **Anders**, certain procedural and substantive requirements must be met." **Commonwealth v. Tejada**, 176 A.3d 355, 358 (Pa. Super. 2017). Procedurally, counsel must,

> (1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) furnish a copy of the brief to the defendant; and (3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

**Id**. at 359. Substantively, counsel must file an **Anders** brief, in which counsel:

> (1) provide[s] a summary of the procedural history and facts, with citations to the record; (2) refer[s] to anything in the record that counsel believes arguably supports the appeal; (3) set[s] forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous.

---

2018). Mother also filed a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on the same date. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on July 23, 2019.

*Commonwealth v. Hankerson*, 118 A.3d 415, 419–420 (Pa. Super. 2015),

*quoting Santiago*, 978 A.2d at 361.

In this case, we acknowledge Counsel's compliance with *Anders*'

procedural and substantive requirements. "Therefore, we now have the

responsibility 'to make a full examination of the proceedings and make an

independent judgment to decide whether the appeal is in fact wholly

frivolous.'" *Commonwealth v. Tukhi*, 149 A.3d 881, 886 (Pa. Super. 2016),

*quoting Flowers*, 113 A.3d at 1248.

Counsel's *Anders* brief raises the following issue for our review:

1. Whether the trial court committed reversible error[] when it involuntarily terminated Mother's parental rights and changed the goal from reunification to adoption where such determination was not supported by the clear and convincing evidence under the [A]doption [A]ct, 23 Pa.C.S.A. [§ 2511(a)(2)?][3]

2. Whether the trial court committed reversible error when it involuntarily terminated Mother's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical[,] and emotional needs of [] [C]hild as required by the [A]doption [A]ct, 23 Pa.C.S.A. § 2511(b)[?]

3. Whether[] the trial court erred because the evidence was overwhelming and undisputed that Mother demonstrated a genuine interest and sincere, persistent, and unrelenting effort to maintain a parent-child relationship with [] [C]hild[?]

*See Anders* Brief, at 7 (un-paginated).

_____

[3] Counsel's *Anders* brief addresses both the goal change and the court's Section 2511(a) determinations in one issue. For clarity, we first address the goal change issue and then discuss Mother's challenge to the termination of her parental rights.

With regard to dependency cases:

[t]he standard of review which this Court employs in cases of dependency is broad. However, the scope of review is limited in a fundamental manner by our inability to nullify the fact-finding of the lower court. We accord great weight to this function of the hearing judge because he is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before him. Relying upon his unique posture, we will not overrule his findings if they are supported by competent evidence.

*In re N.A.*, 116 A.3d 1144, 1148 (Pa. Super. 2015). Thus, we employ an abuse of discretion standard. *In re L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015).

Regarding the disposition of dependent children, the Juvenile Act, 42 Pa.C.S. §§ 6351(e)-(g), provides the criteria for a permanency plan. The court must determine a disposition best suited to the safety and protection, as well as the physical, mental, and moral welfare of the child. *See* 42 Pa.C.S. § 6351(g). With a goal change petition, the trial court

considers the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved.

*In Interest of A.N.P.*, 155 A.3d 55, 67 (Pa. Super. 2017), *quoting* *In re A.K.*, 936 A.2d 528, 533 (Pa. Super. 2007).

We have further noted:

[w]hen a child is adjudicated dependent, the child's proper placement turns on what is in the child's best interest, not on what the parent wants or which goals the parent has achieved. Moreover, although preserving the unity of the family is a purpose of the [Juvenile] Act, another purpose is to "provide for the care,

- 7 -

protection, safety, and wholesome mental and physical development of children coming within the provisions of this chapter." 42 Pa.C.S. § 6301(b)(1.1). Indeed, "[t]he relationship of parent and child is a status and not a property right, and one in which the state has an interest to protect the best interest of the child."

***In re K.C.***, 903 A.2d 12, 14-15 (Pa. Super. 2006) (some citations omitted).

Here, the court did not err in changing Child's goal to adoption. Throughout the history of the case, Mother was required to participate in drug counseling and mental health services to achieve reunification. Mother, however, failed to achieve those goals. Indeed, Mother was discharged from her drug treatment program due to her failure to attend and did not participate in court-ordered random drug testing; when tested in June 2019, Mother was positive for marijuana and opiates. Mother also failed to obtain stable housing. Thus, Mother was not compliant with the family service plan, made no progress towards alleviating the circumstances that led to Child's placement, and showed no indication that those circumstances would be remedied in any reasonable amount of time. ***See***, ***e.g.***, ***A.N.P.***, 155 A.3d at 67. Accordingly, a goal change was appropriate.

We turn now to Mother's arguments regarding the termination of her parental rights. We review cases involving the termination of parental rights according to the following standards.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse

of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (internal citations and quotations omitted).

Termination requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We conclude that termination was proper under section 2511(a)(2).

The relevant subsections of 23 Pa.C.S.A. § 2511 provide:

**(a)** **General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*\*\*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

**(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

To satisfy the requirements of Section 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *See In Interest of Lilley*, 719 A.2d 327, 330 (Pa. Super. 1998). The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied. *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties. *Id.*

Here, to be reunited with Child, Mother was required to complete the following objectives, (1) attend intensive outpatient drug and alcohol treatment and follow all recommendations; (2) refrain from using any illegal substance; (3) participate in mental health services; (4) take the appropriate psychiatric medication and remain under the supervision of a doctor in doing so; (5) obtain stable housing; and (6) attend weekly supervised visits with Child. Mother failed to complete a single objective. Accordingly, we discern no error in the trial court's finding that clear and convincing evidence supported the termination of Mother's parental rights pursuant to Section 2511(a)(2). *See Lilley*, 719 A.2d at 330; *Z.P.*, 994 A.2d at 1117.

Next, we must consider whether Child's needs and welfare will be met by termination pursuant to Subsection (b). *See Z.P.*, 994 A.2d at 1121. "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *Id.* The court is not required to use expert testimony, and social workers and caseworkers may offer evaluations as well. *Id.* Ultimately, the concern is the needs and welfare of a child. *Id.*

We have stated:

[b]efore granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the intangible dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of the relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the child[ren]'s needs and

- 11 -

welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

***Z.P.***, 994 A.2d at 1121, *quoting **In re C.S.***, 761 A.2d 1197, 1202 (Pa. Super. 2000). The trial court may equally emphasize the safety needs of the child and may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. ***See In re N.A.M.***, 33 A.3d 95, 103 (Pa. Super. 2011); ***In re K.Z.S.***, 946 A.2d 753, 763 (Pa. Super. 2008). Where there is no evidence of a bond between the parent and child, it is reasonable to infer that no bond exists. ***Id.*** "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." ***In re B.,N.M.***, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

Here, the record supports the existence of a bond between Mother and Child, in that Child is glad to see Mother. However, testimony also supports the court's conclusion that the bond is not parental and that the child/parent bond exists between Child and Paternal Grandmother. ***See*** Trial Court Opinion, 7/23/19, at 6. Testimony established that Child was thriving in her foster placement with a foster parent who provided for her emotional, physical, and developmental well-being, and that Child wished to be adopted by Paternal Grandmother. Thus, we discern no abuse of discretion in the trial

court's conclusion that Child's needs and welfare are best served by termination.

Accordingly the trial court did not commit an abuse of discretion in terminating Mother's parental rights. We also agree with Attorney Hayburn that Mother's issues are frivolous. We have independently reviewed the record and find no other issues of arguable merit that Mother could pursue on appeal. Accordingly, we affirm the trial court decree and order and grant counsel's petition to withdraw.

Decree and order affirmed. Motion to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/20/19