J-S09013-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BYRON MCDONALD | : | |
| | : | |
| Appellant | : | No. 2349 EDA 2025 |

Appeal from the Judgment of Sentence Entered January 8, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009591-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BYRON MCDONALD | : | |
| | : | |
| Appellant | : | No. 2488 EDA 2025 |

Appeal from the Judgment of Sentence Entered January 8, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009568-2021

BEFORE:   MURRAY, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED MAY 4, 2026**

Byron McDonald (Appellant) appeals from the judgment of sentence imposed following his nonjury convictions of two counts each of third-degree murder and possessing instruments of crime (PIC); and one count each of persons not to possess firearms, firearms not to be carried without a license,

_____

[*] Former Justice specially assigned to the Superior Court.

and carrying firearms on public streets in Philadelphia.[1]  Appellant's court-appointed counsel, Stephen T. O'Hanlon, Esquire (Counsel), has filed in this Court a motion to withdraw as counsel and an accompanying brief in accordance with **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 249 (Pa. 2009).  Because we have identified a meritorious legality of sentencing issue upon our independent review, we deny Counsel's motion to withdraw, vacate the judgment of sentence as it relates to an offense of which the trial court acquitted Appellant, and affirm the judgment of sentence in all other respects.

The trial court summarized the relevant facts, adduced at Appellant's nonjury trial, as follows:

> On the morning of April 9, 2021, [in Philadelphia, Pennsylvania, Appellant] shot and killed Morgan Braxton[ (Ms. Braxton)], the mother of [Appellant's] three-year-old child, at 4802 N[orth] 8th Street[.  Shortly thereafter, Appellant drove Ms. Braxton's] vehicle, a burgundy 2017 Chevy Malibu[ (the Malibu)], to 2540 N[orth] Bancroft Street, [where Appellant] shot and killed [Ms. Braxton's] mother, Tamara Aikens[ (Ms. Aikens)].  [Ms.] Aikens'[s] shooting was captured on surveillance video from nearby residential homes and the Bancroft Mini-Mart.  At approximately 1:24 p.m., the [] Malibu drove up the street[,] and stopped in front of [Ms.] Aikens'[s] home[.  T]he passenger side window was lowered and the driver fired multiple shots at [Ms.] Aikens, while she was walking up her front steps, [striking her in the] back, abdomen, and right arm.  There were seven strike marks on the front door with multiple bullet fragments recovered from around the front door; one projectile [was] recovered from the metal front door, and another projectile [was] recovered from a sock within a laundry bag behind the front door.  N.T., 10/23/23,

_____

[1] 18 Pa.C.S.A. §§ 2502(c)(2), 907(a), 6105(a)(1), 6106(a)(1), 6108.

at 12, 14-16, 32-35, 71. [Ms. Aikens was later pronounced dead at Temple University Hospital.]

After the shooting, [Appellant] drove the [] Malibu to [the home of his mother,] Teresa Winfrey[ (Ms. Winfrey)], [] at 934 N[orth] 48th Street in Philadelphia. At 2:55 p.m., [Ms. Winfrey] drove the [] Malibu to the Aloft Hotel near the Philadelphia International Airport, where she rented a room from April 9th to April 15th, 2021. After renting the hotel room, [Ms. Winfrey] left and is seen on surveillance video returning to the room with [Appellant] and [Appellant's] child. *Id.* at 113-15, 142-53, 197-98.

On April 12, 2021, Detective [James] Perfidio contacted a relative of [Ms.] Braxton, Ranika Darden, who stated that she had not heard from [Ms.] Braxton, feared for [Ms. Braxton's] safety, and had filed a missing person's report on April 11, 2021. Police officers then conducted a search of [Ms.] Braxton's residence … and found [Ms.] Braxton[, deceased,] in the dining room with two gunshot wounds to her neck and left leg. One projectile was recovered from the basement floor[, which] had traveled through the dining room floor. Two Aguila brand .40 caliber fired cartridge casings ("FCCs") were found near [Ms. Braxton's] body[,] and twenty-six .40 caliber rounds of the same brand were located in an ammo box in a purse in the kitchen. *Id.* at 58, 62, 72-74, 82-84, 103-17, 131-40, 152-53, 197-203, 228-30, 241-42.

That same day, [law enforcement] received information about a burgundy 2017 Chevy Malibu parked … [at] the Aloft Hotel. Upon searching the hotel, [Appellant] was arrested in the hotel room …. One .40 caliber Aguila brand FCC was recovered from the rear driver's side floor of the [] Malibu, which was the same caliber and brand as the two .40 caliber FCCs found next to [Ms.] Braxton's body. *Id.* at 158-59; N.T., 10/24/23, at 142-45.

[Law enforcement determined t]he two FCCs found at [Ms.] Braxton's residence, and the FCC recovered from inside the [] Malibu, were fired from the same firearm. The projectile recovered from [Ms.] Braxton's residence, and the projectiles recovered from [Ms.] Aikens'[s] home, were also fired from the same firearm. Five particles of gunshot residue were found on the passenger side of the [] Malibu's roof interior. [Appellant's] DNA was also found on the steering wheel, dashboard controls, [and]

driver's seat controls of the [] Malibu.[2]  N.T., 10/23/23, at 157-58, 160-65; N.T., 10/24/23, at 5-14, 18-19, 45-62, 89-94.

Call detail records from [Appellant's] cell phone showed that [Appellant] was in the area of 4802 N[orth] 8th Street on the morning of April 9, 2021, until about 12:39 p.m.  The device then traveled to 2540 N[orth] Bancroft Street at 1:20 p.m.  The device then traveled to the area of [Ms. Winfrey's] home at 934 N[orth] 48th Street at 1:45 p.m.  N.T., 10/24/23, at 188-203.

[Appellant] did not have a valid license to carry a firearm, nor was he eligible to carry a firearm on the date of the murders. N.T., 5/9/23, at 41-42; N.T., 10/24/23, at 220.

Trial Court Opinion, 3/8/24, at 2-4 (some citations omitted; citations and punctuation modified; footnote added).

The Commonwealth filed Appellant's charges at two separate dockets: CP-51-CR-0009568-2021 (Case 9568) and CP-51-0009591-2021 (Case 9591) (collectively, the cases).  At both cases the Commonwealth charged Appellant with one count each of first-degree murder,[3] persons not to possess firearms, firearms not to be carried without a license, carrying a firearm on public streets in Philadelphia, and PIC.  On March 16, 2023, the Commonwealth filed identical motions to consolidate the cases for trial.  Appellant filed briefs opposing consolidation on March 30, 2023.

On May 9, 2023, the matter proceeded to a hearing on the Commonwealth's motions to consolidate.  Following argument, the trial court

---

[2] Law enforcement did not recover a firearm.  N.T., 10/23/23, at 252.

[3] 18 Pa.C.S.A. § 2502(a)(1).

granted the Commonwealth's motions. *See* N.T., 5/9/23, at 22 (the trial court opining, "I just don't believe that these two incidents can be separated[,]" noting evidence of a continuing course of conduct, flight, ballistics evidence indicating the same firearm was used in both murders, and Appellant's relationship to both victims).

Before adjourning, the parties placed on the record their agreement that, in exchange for Appellant waiving his right to a jury trial, the Commonwealth would (1) reduce Appellant's first-degree murder charges to third-degree murder, and (2) not invoke the applicable mandatory sentencing provisions if the trial court convicted Appellant of one or both counts of third-degree murder. *Id.* at 25, 28; *see also id.* at 33-40 (following a colloquy, the trial court determining Appellant was voluntarily, knowingly, and

intelligently waiving his right to a jury trial).[4]  The cases were scheduled for testimony to commence on October 23, 2023.[5]

Pertinently, at an October 6, 2023, status conference, Appellant requested a continuance based on the Commonwealth's allegedly belated disclosure of a cell-phone-tower analysis report prepared by Federal Bureau of Investigation Special Agent Bill Shute (Agent Shute) (Agent Shute's expert report).  N.T., 10/6/23, at 4; *see also id.* at 3 (trial counsel indicating the Commonwealth emailed him Agent Shute's expert report on September 25, 2023).  Appellant argued that Agent Shute's expert report was subject to rule-based mandatory disclosure and timing requirements.  *Id.*

---

[4] At the May 9, 2023, hearing, the trial court noted that Appellant had a prior conviction for third-degree murder.  N.T., 5/9/23, at 6; *see also* 42 Pa.C.S.A. § 9715(a) (mandating that any defendant convicted of murder, who had previously been convicted of murder or voluntary manslaughter, shall be sentenced to life in prison).  Appellant did not seek recusal of the trial court based upon its knowledge of Appellant's prior third-degree murder conviction. *Id.* at 27 (Appellant's trial counsel, Attorney Laurence Narcisi, Esquire (trial counsel), indicating that he had discussed with Appellant the trial court's knowledge of Appellant's prior conviction, and trial counsel opining that the trial court "would be capable of separating that knowledge from the evidence presented[,] and … it's my opinion that this would be a fair forum to proceed in.").

[5] Because the trial court admitted a stipulation into evidence at the May 9, 2023, hearing, Appellant's trial commenced on that date.  *See* N.T., 5/9/23, at 41-42 (the parties stipulating that an unnamed custodian of records for the Pennsylvania State Police, if called, would testify that her search of law enforcement databases revealed that Appellant, on the dates relevant to the cases, did not posses a valid license to carry a concealed firearm); *see also Commonwealth v. Martin*, 97 A.3d 363, 365 (Pa. Super. 2014) ("In a bench trial, jeopardy attaches when the trial court begins to hear the evidence." (citation and ellipsis omitted)).

The Commonwealth responded that, pursuant to a March 10, 2023, order, the Commonwealth provided Appellant with the raw cell phone data relevant to the cases, within thirty days of its receipt, on April 14, 2023. ***Id.*** at 6. According to the Commonwealth, after receiving Appellant's cell phone records, it requested that Agent Shute "put together a presentation" of those records, which it promptly passed to Appellant upon receiving it in September 2023. ***Id.***

The trial court denied Appellant's continuance request, but permitted him to file a motion *in limine* within ten days, which the trial court would address on the trial date, October 23, 2023. On October 13, 2023, trial counsel mistakenly filed a motion *in limine* intended for another case, which had no bearing on Appellant's discovery issue, and which referenced an individual not involved in Appellant's cases. ***See generally*** Motion *in Limine*, 10/13/23; ***see also*** N.T., 10/25/23, at 11 (trial counsel acknowledging that he had mistakenly filed a motion intended for another case). Based on Appellant's failure to file an appropriate motion *in limine*, the trial court denied Appellant's unspecified request for relief.[6] N.T., 10/23/23, at 3; ***see also id.*** at 7-8 (the trial court indicating that it had researched the discovery issue as

_____

[6] Trial counsel filed a "corrected motion *in limine*" on October 24, 2023, seeking the exclusion of Agent Shute's expert report, because trial counsel had "made strategic decisions based on the discovery available" on May 9, 2023. Corrected Motion *in Limine*, 10/24/23, ¶ 11. The next day, the trial court reaffirmed its original ruling. N.T., 10/25/23, at 11.

Appellant described it at the October 6, 2023, hearing, and concluded the Commonwealth's allegedly belated disclosure of Agent Shute's expert report merited no relief).

At trial, the Commonwealth presented the testimony of several witnesses, each of whom testified consistently with the trial court's above factual recitation. Appellant presented no witnesses and elected not to testify on his own behalf. At the conclusion of trial, the trial court announced the following verdicts in open court: (1) at Case 9568, the trial court found Appellant guilty of third-degree murder and PIC, and not guilty of the remaining charges; (2) at Case 9591, the trial court found Appellant guilty of all charges. N.T., 10/25/23, at 55; *see also* Commonwealth's Brief at 7 (the Commonwealth stating the trial court "found [Appellant] guilty [of] two counts of third-degree murder and [PIC,] and one count of possessing a firearm prohibited, carrying a firearm without a license, and carrying a firearm on public streets in Philadelphia.").[7]

The matter proceeded to a sentencing hearing on January 8, 2024, at the conclusion of which the trial court sentenced Appellant to an aggregate 40

---

[7] Notwithstanding the trial court's oral rendition of the verdicts, the trial court's "Trial Disposition and Dismissal Form" for Case 9568, contained within the certified record, recorded guilty verdicts for Appellant's charges of third-degree murder and **persons not to possess firearms**, and not guilty verdicts for the remaining charges, including **PIC**. Trial Disposition Form, 10/25/23, at 1.

to 80 years in prison.[8]  Appellant did not file post-sentence motions.  Appellant timely filed separate notices of appeal at each docket number.  Appellant also timely filed court-ordered Pa.R.A.P. 1925(b) concise statements raising the following, identical issues: (1) the "[t]rial court erred in granting the Commonwealth's [m]otion to consolidate [the cases for trial]"; and (2) the "[t]rial court erred in admitting expert testimony[, and Agent Shute's expert report,] that [was] passed by the Commonwealth to [Appellant] after the trial commenced."  Concise Statements, 2/16/24, ¶¶ 6(a)-(b).  On March 3, 2024, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a).

On September 26, 2024, this Court dismissed Appellant's appeals based on his failure to file appellate briefs.  On May 1, 2025, trial counsel filed a petition pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, seeking reinstatement of Appellant's direct appeal rights and the appointment of new counsel.  **See generally** PCRA Petitions, 5/1/25 (detailing trial counsel's severe health issues, which he averred impeded his representation after filing Appellant's initial direct appeals).

_____

[8] At Case 9568, the trial court sentenced Appellant to 20 to 40 years for third-degree murder, and 5 to 10 years for **persons not to possess firearms**.  At Case 9591, the trial court sentenced Appellant to 20 to 40 years for third-degree murder, 5 to 10 years for persons not to possess firearms, and imposed no further penalty for the remaining offenses.  The trial court ordered Appellant's sentences for his firearms offenses to run concurrently with his sentences for third-degree murder.

On May 8, 2025, the trial court granted Appellant's petition; reinstated Appellant's right to file a direct appeal, *nunc pro tunc*, within 30 days; removed trial counsel as Appellant's attorney; and appointed Attorney Derek Stensen, Esquire (Attorney Stensen), to represent Appellant in his direct appeal. Order, 5/8/25.

Appellant did not timely appeal. Instead, on August 5 and 18, 2025, Attorney Stensen filed petitions for leave to file notices of appeal *nunc pro tunc*, which the trial court construed as second PCRA petitions. On August 20, 2025, the trial court granted Appellant's petitions and afforded Appellant 30 days to file notices of appeal *nunc pro tunc*. The trial court additionally removed Attorney Stensen as Appellant's attorney and appointed Counsel to represent Appellant in the instant appeal.

Appellant complied with the trial court's order by filing notices of appeal on September 4, 2025. That same date, the trial court refiled its March 3, 2024, Rule 1925(a) opinion. On September 24, 2025, Appellant, *pro se*, filed in the trial court a motion for the appointment of new counsel, which the trial

court denied.[9] On September 27, 2025, Counsel filed a statement of intent to withdraw, pursuant to Pa.R.A.P. 1925(c)(4).[10]

On October 15, 2025, Counsel filed in this Court a motion to withdraw from representation and a separate *Anders* brief. Appellant did not retain separate counsel, file a *pro se* brief, or substantively respond to Counsel's motion to withdraw.[11]

We initially address Counsel's motion to withdraw prior to reaching the substantive issues raised in the *Anders* brief. *See Commonwealth v. Strasser*, 134 A.3d 1062, 1065 (Pa. Super. 2016) ("[W]e do not consider the merits of an issue raised in an *Anders* brief without first reviewing a request

---

[9] Appellant's motions, and the trial court's orders disposing of those motions, were entered on the respective dockets, but are not contained within the certified records.

[10] On October 8, 2025, we granted Counsel's application to consolidate the instant appeals.

[11] On March 24, 2026, Appellant filed in this Court a *pro se* application for the appointment of new counsel. *See* Application for Appointment of Counsel, 3/24/26, at 1 (Appellant vaguely alleging that Counsel "has not represented me effectively."). As we conclude herein that Counsel advised Appellant of his right to retain new counsel or raise additional issues *pro se*, we deny Appellant's motion. To the extent Appellant premises his application for the appointment of new counsel on Counsel's alleged ineffectiveness, Appellant may raise this issue in a timely PCRA petition. *See* 42 Pa.C.S.A. § 9545(b)(1) (providing that a PCRA petition, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final[.]"), (b)(3) ("[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review.").

- 11 -

to withdraw"). Counsel seeking to withdraw pursuant to *Anders* must satisfy certain procedural and substantive requirements. *Commonwealth v. Tejada*, 176 A.3d 355, 358 (Pa. Super. 2017). Procedurally, counsel must

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the *Anders* brief to the appellant; and 3) advise the appellant that he or she has the right to retain private counsel or raise additional arguments that the appellant deems worthy of the court's attention.

*Commonwealth v. Gabra*, 336 A.3d 1052, 1056 (Pa. Super. 2025) (citation omitted).

> Substantively, counsel must file an *Anders* brief, in which counsel

> (1) provide[s] a summary of the procedural history and facts, with citations to the record; (2) refer[s] to anything in the record that counsel believes arguably supports the appeal; (3) set[s] forth counsel's conclusion that the appeal is frivolous; and (4) state[s] counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. Once counsel has complied with the procedural requirements, we review the record and render an independent judgment as to whether the appeal is wholly frivolous. *Commonwealth v. Yorgey*, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*).

Instantly, Counsel has complied with all procedural and substantive requirements of *Anders*/*Santiago*. Counsel represents, in his motion to withdraw, that he "has engaged in an extensive review of the [r]ecord in this matter and applicable law[,]" and "concluded that Appellant has no issues of

- 12 -

merit to raise on appeal." Motion to Withdraw, 10/15/25, ¶¶ 2, 3; *see also Anders* Brief, 10/15/25, at 19 (Counsel opining the appeal is "wholly frivolous"). Counsel has attached to his motion a copy of the correspondence he sent to Appellant, which advised Appellant of his right to retain new counsel or proceed *pro se*. *Id.*, Exhibit A; *see also Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005). Additionally, Counsel provided Appellant with a copy of the *Anders* brief, which (1) properly summarizes the factual and procedural history; (2) details issues that could arguably support Appellant's appeal; and (3) explains Counsel's assessment as to why these issues are wholly frivolous. *Id.* ¶ 5; *see also Anders* Brief at 5-8, 10-20.[12] Accordingly, we review Appellant's issues presented in Counsel's *Anders* brief.

The *Anders* brief identifies two issues. First, Appellant claims the trial court erred in granting the Commonwealth's motion to consolidate the cases. *Anders* Brief at 10. Second, Appellant claims the trial court erred by permitting the admission of evidence provided to Appellant after trial had commenced. *Id.* at 14.

In his first claim, Appellant questions whether evidence related to Ms. Braxton's murder would be inadmissible in the prosecution of Ms. Aikens's

---

[12] In his statement of questions involved, Counsel frames the issues in general terms of whether there are issues of arguable merit and whether the appeal is wholly frivolous. *Anders* Brief at 4. However, the brief's argument section contains the discrete issues that Counsel has identified. *Id.* at 10-20.

murder case, and *vice versa*, thereby rendering the consolidation of the cases an abuse of the trial court's discretion. *Id.* at 10.

"The decision to consolidate offenses in a single trial is within the trial court's sole discretion, which we will not reverse absent a determination that there was a clear injustice to the defendant or a manifest abuse of discretion." *Commonwealth v. Walker*, 350 A.3d 54, 61 (Pa. 2026).

"The general policy of the law[] is to encourage joinder of offenses and consolidation of indictments when judicial economy can thereby be effected, especially when the result will be to avoid the expensive and time[-]consuming duplication of evidence." *Commonwealth v. Johnson*, 236 A.3d 1141, 1150 (Pa. Super. 2020) (*en banc*) (citation omitted).

Pennsylvania Rule of Criminal Procedure 582 provides, in relevant part, the following:

**(A) Standards**

(1) Offenses charged in separate indictments or informations may be tried together if:

(a) the information of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or

(b) the offenses charged are based on the same act or transaction[.]

Pa.R.Crim.P. 582(A)(1).

Regarding severance, Rule 583 states the following:

The court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together.

Pa.R.Crim.P. 583; *see also Commonwealth v. Gray*, 296 A.3d 41, 47 (Pa. Super. 2023) ("It is the appellant's burden to establish prejudice." (citation omitted)).

Under Rule 583, the prejudice the defendant suffers, due to the joinder, must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime. *Commonwealth v. Lauro*, 819 A.2d 100, 107 (Pa. Super. 2003).

The prejudice of which Rule [583] speaks is, rather, that which would occur if the evidence tended to convict [a defendant] only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence. Additionally, the admission of relevant evidence connecting a defendant to the crimes charged is a natural consequence of a criminal trial, and it is not grounds for severance by itself.

*Id.* (citations and quotation marks omitted; formatting modified).

Considering Rules 582 and 583 together, our Supreme Court set forth the following three-part test for deciding whether a court should join or sever charges:

(1) "whether the evidence of each of the offenses would be admissible in a separate trial for the other;" (2) "whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and," (3) "if the answers to these inquiries are in the affirmative, whether the defendant will be unduly prejudiced by the consolidation of offenses."

*Walker*, 350 A.3d at 61 (quoting *Commonwealth v. Lark*, 543 A.2d 491, 497 (Pa. 1988)). Pursuant to this test, "a court must first determine if the evidence of each of the offenses would be admissible in a separate trial for the other." *Commonwealth v. Collins*, 703 A.2d 418, 422 (Pa. 1997).

Pennsylvania Rule of Evidence 404(b) provides that generally, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Pa.R.E. 404(b)(1). "However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident." *Commonwealth v. Sherwood*, 982 A.2d 483, 497 (Pa. 2009) (citing Pa.R.E. 404(b)(2)).

Pertinently, "[e]vidence of another crime is admissible where the conduct at issue is so closely related that proof of one criminal act tends to prove the other. … Such evidence is particularly relevant to prove identity." *Commonwealth v. Natividad*, 773 A.2d 167, 174 (Pa. 2001); *see also Commonwealth v. Stiles*, 143 A.3d 968, 975-76 (Pa. Super. 2016) ("While evidence concerning distinct crimes is inadmissible solely to demonstrate a defendant's bad character or his propensity to commit crimes, that evidence will be permitted to establish the identity of the perpetrator where proof of one crime tends to prove the others." (citing *Commonwealth v. Cousar*, 928 A.2d 1025, 1037 (Pa. 2007)).

"Identity as to the charged crime may be proven with evidence of another crime where the separate crimes share a method so distinctive and circumstances so nearly identical as to constitute the virtual signature of the defendant." **Commonwealth v. Weakley**, 972 A.2d 1182, 1189 (Pa. Super. 2009) (citation omitted).

> In comparing the methods and circumstances of separate crimes, a court must necessarily look for similarities in a number of factors, including: (1) the manner in which the crimes were committed; (2) weapons used; (3) ostensible purpose of the crime; (4) location; and (5) type of victims. Remoteness in time between the crimes is also factored, although its probative value has been held inversely proportional to the degree of similarity between crimes.

**Id.** (citations omitted).

Moreover, "[o]ur Supreme Court has consistently recognized that admission of distinct crimes may be proper where it is part of the history or natural development of the case, *i.e.*, the *res gestae* exception." **Commonwealth v. Brown**, 52 A.3d 320, 326 (Pa. Super. 2012) (citations omitted). The *res gestae* exception permits "the admission of evidence of other crimes or bad acts to tell 'the complete story.'" **Commonwealth v. Hairston**, 84 A.3d 657, 665 (Pa. 2014). It applies where the other crimes or bad acts "were part of a chain or sequence of events which formed the history of the case and were part of its natural development." **Brown**, 52 A.3d at 326 (citation omitted). Such evidence may be admitted "only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2).

Instantly, the trial court found consolidation of the cases appropriate, concluding evidence of each murder would be admissible in the separate trial for the other based on the *res gestae* and identity exceptions to Rule 404(b). Trial Court Opinion, 3/8/24, at 5. The trial court explained its rationale as follows:

> In these cases, the evidence established that the murders of [Ms.] Braxton and [Ms.] Aikens occurred on the same day, within hours of one another, with the same firearm. [Appellant] shot and killed [Ms.] Braxton, then took her vehicle to [Ms. Aikens's] house, where he shot and killed [Ms.] Aikens. [Appellant's] actions were close in time and part of the same sequence of events. The evidence presented by the Commonwealth would have been admissible in both cases if they had been tried separately. [Appellant's] DNA was found in the [Malibu,] along with an FCC under the driver's seat that matched the FCCs found at [Ms.] Braxton's home. The projectiles recovered from both scenes were fired from the same firearm. [Appellant's] cell phone records established [Appellant's] path of travel on the day of the murders, and showed that he was in the area of [Ms.] Braxton's apartment in the morning before travelling to [Ms.] Aikens's home at the time of her murder. [Appellant] then drove to [Ms. Winfrey's] home. [Ms. Winfrey] is then seen on surveillance video driving alone in the [] Malibu to rent a hotel room before bringing [Appellant] and [Appellant and Ms. Braxton's] child to the hotel minutes later.

> The relationships between [Appellant] and the decedents also supported joinder in these cases. [Appellant] shot and killed [Ms. Braxton,] the mother of [Appellant's] child with whom he was living at the time, then took [Ms. Braxton's] vehicle and used it to drive to [the home of Ms. Aikens, the maternal grandmother of Appellant's child], where he shot and killed her as well. The decedents were not two unrelated individuals who had no connections to one another. Both shootings were interconnected and part of one continuous set of actions taken by [Appellant] within a three-hour period.

> The evidence that the FCCs and projectiles found at both scenes and in the [] Malibu matched, [the presence of Appellant's] DNA in the [] Malibu, and the path of [Appellant's] phone [on] the

day of the murders would have been admissible in separate trials for each case to establish [Appellant's] identity as the shooter. The evidence was capable of separation by … this [c]ourt. There was no danger of confusion regarding the evidence that established that [Appellant] shot [Ms.] Braxton[,] then shot [Ms.] Aikens hours later.

This [c]ourt's decision to permit joinder was not unduly prejudicial to [Appellant,] and he did not suffer any clear injustice as a result of the consolidation. [***See Walker***, 350 A.3d at 61.] Prejudice from consolidation only occurs where the evidence tends to convict the defendant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence. [***Commonwealth v. Dozzo***, 991 A.2d 898, 902 (Pa. Super. 2010) ("Under Rule 583, the prejudice the defendant suffers due to joinder must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime." (citation omitted)).] …. The evidence presented at trial was not simply admitted as propensity evidence, but was used to identify [Appellant] as the shooter and show that his conduct was part of the same sequence of events …. As [Appellant] has failed to establish prejudice, his claim is without merit.

***Id.*** at 6-7 (punctuation modified). We discern no abuse of the trial court's discretion in ordering the cases consolidated for trial.

Regarding the first part of the consolidation test recently reaffirmed in ***Walker***, the trial court correctly determined that evidence of Ms. Braxton's and Ms. Aikens's murders would have been admissible at both trials if conducted separately. ***See Walker***, 350 A.3d at 61. The circumstances surrounding the homicides in the cases "constitute[d a] virtual signature of" Appellant, in that they involved the same murder weapon, targeted members of the same family, and occurred in close physical and temporal proximity. ***Weakley***, 972 A.2d at 1189; ***see also Cousar***, 928 A.2d at 1038 (concluding

that consolidation of the appellant's two homicide cases was appropriate where, *inter alia*, "a crucial piece of evidence linking the two homicides was the use of the same gun"); ***Commonwealth v. Reid***, 626 A.2d 118, 121 (Pa. 1993) (concluding the trial court did not err by permitting evidence in the appellant's homicide trial of a subsequent murder to establish identity, where the same gun was used in both crimes). The facts involved in both murders additionally followed a "chain or sequence," as demonstrated by the ballistic and cell phone evidence, naturally leading from Ms. Braxton's murder to Ms. Aikens's murder. ***Brown***, 52 A.3d at 326.

Concerning the second and third parts of the test for consolidation, any potential prejudice was drastically mitigated by the fact that Appellant elected to proceed to a nonjury trial, as trial judges are presumed capable of considering evidence for its proper purpose. ***See Commonwealth v. O'Brien***, 836 A.2d 966, 972 (Pa. Super. 2003) (reversing the trial court's exclusion of Rule 404(b) other bad acts evidence, observing that the defendant's decision "to be tried by a judge rather than a jury minimizes, if not eliminates, the potential for prejudice[,]" and noting that "where a criminal case proceeds before a judge sitting without a jury, there is a presumption that his knowledge, experience, and training will enable him to disregard inadmissible evidence and other improper elements" (citations omitted)).

Based on the foregoing, Appellant's first issue merits no relief.

In his second claim, Appellant argues the trial court erred by admitting Agent Shute's expert report, because it was not disclosed to Appellant until after his trial had commenced. *Anders* Brief at 14.[13]

Initially, we observe that "[d]ecisions involving discovery in criminal cases lie within the discretion of the trial court and the trial court's ruling will not be reversed absent abuse of that discretion." *Commonwealth v. Renninger*, 269 A.3d 548, 565 (Pa. Super. 2022) (*en banc*).

Pennsylvania Rule of Criminal Procedure 573, pertaining to pretrial discovery, provides, in pertinent part, as follows:

**(B) Disclosure by the Commonwealth.**

(1) *Mandatory*. In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall,

---

[13] Counsel focuses his analysis on whether the Commonwealth violated Appellant's right to due process by purportedly withholding discovery material in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."). *See Anders* Brief at 14-18. However, as the evidence in question in the instant case was **inculpatory**, *Brady* is inapplicable. *See Commonwealth v. Counterman*, 719 A.2d 284, 297 (Pa. 1998) ("[T]he constitutional duty to disclose under *Brady* encompasses only exculpatory evidence; it is not a general rule of discovery in criminal cases." (citations omitted)). Accordingly, as part of our independent review, we consider whether the trial court abused its discretion by refusing to sanction the Commonwealth based on Appellant's claim that it violated pretrial discovery requirements set forth in Pa.R.Crim.P. 573. *See Yorgey*, 188 A.3d at 1197.

when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

* * *

(e) any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth;

(f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence[.]

* * *

**(D) Continuing Duty to Disclose.** If, prior to or during trial, either party discovers additional evidence or material previously requested or ordered to be disclosed by it, which is subject to discovery or inspection under this rule, or the identity of an additional witness or witnesses, such party shall promptly notify the opposing party or the court of the additional evidence, material, or witness.

**(E) Remedy.** If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573(B)(e)-(f), (D), (E).

Significantly,

[a] defendant seeking relief from a discovery violation must demonstrate prejudice. A violation of discovery does not automatically entitle [an] appellant to a new trial. Rather, an appellant must demonstrate how a more timely disclosure would have affected his trial strategy or how he was otherwise prejudiced by the alleged late disclosure.

***Commonwealth v. Causey***, 833 A.2d 165, 171 (Pa. Super. 2003) (citations omitted).

Here, the trial court concluded the Commonwealth did not violate its discovery obligations under Pa.R.Crim.P. 573. Trial Court Opinion, 3/8/24, at 8-9. Even if the Commonwealth had violated Rule 573, the trial court opines, Appellant failed to prove that he suffered any prejudice. ***Id.*** at 9. The trial court addressed the issue as follows:

> [Appellant's] cell phone records, that were analyzed by Agent Shute, were presented at [Appellant's] preliminary hearing on November 22, 2021, and the raw data from those records were provided to [Appellant] in April 2023. The Commonwealth then provided [Agent Shute's] expert report … to [Appellant] on September 25, 2023. Therefore, [Agent Shute's] expert report was given to [Appellant] about [one] month before the waiver trial began in earnest on October 23, 2023. Although [Appellant's] waiver trial technically began on May 9, 2023, when [Appellant] waived his right to a jury trial and the parties entered a stipulation on the record, the actual waiver trial was not held until October 23, 2023. N.T., 10/23/[]23, at 5-7.
>
> The Commonwealth provided the records and [Agent Shute's] expert report to [Appellant] well in advance of trial. [Appellant] had ample time to consult with or hire his own expert to review the records and [Agent Shute's] expert report. [Appellant] had notice of these cell phone records and was well aware that they would be presented at trial. The introduction of Agent Shute's testimony and expert report did not affect [Appellant's] trial strategy or the outcome of the trial. [Appellant] also had the opportunity to cross-examine Agent Shute regarding his analysis and conclusions in [his] report. As [Agent Shute's] expert report was provided to [Appellant] well before trial, and [Appellant] had the opportunity to cross-examine the Commonwealth's expert, [Appellant] cannot establish prejudice.

***Id.*** at 8-9 (punctuation modified).

The trial court's findings are supported by the record, and we agree with its legal conclusion. The record confirms that Appellant wholly failed to argue, let alone demonstrate, prejudice resulting from the Commonwealth's purportedly late disclosure of Agent Shute's expert report.

At the October 6, 2023, status conference, trial counsel indicated he desired additional time to review Agent Shute's expert report with Appellant to "make any decisions going forward as far as [Agent Shute's expert report] is concerned." N.T., 10/6/23, at 4. Trial counsel acknowledged, however, that after initially receiving cell phone records and data in discovery—on some date prior to receiving Agent Shute's expert report—he had decided "not to hire an expert … or have an expert review" the data. *Id.* at 4-5. Further, in his corrected motion *in limine*, Appellant baldly claimed that he had made "strategic decisions" prior to receiving Agent Shute's expert report, Corrected Motion *in Limine*, 10/24/23, ¶ 11, but did not explain "**how** a more timely disclosure would have affected his trial strategy or **how** he was otherwise prejudiced by the alleged late disclosure." *Causey*, 833 A.2d at 171 (emphasis added).

As Appellant failed to demonstrate any prejudice resulting from the allegedly belated disclosure of Agent Shute's expert report, we discern no abuse of the trial court's discretion in denying a continuance or the exclusion of Agent Shute's expert report from evidence. *See id.*; *Renninger*, 269 A.3d at 565. Appellant's second issue entitles him to no relief.

Although we conclude the issues presented in Counsel's **Anders** brief are wholly frivolous, our independent review discloses a facially meritorious issue that entitles Appellant to vacatur of his sentence for persons not to possess firearms at Case 9568. **See Yorgey**, 188 A.3d at 1197; **see also Commonwealth v. Rosario**, 294 A.3d 338, 342 n.4 (Pa. 2023) ("An appellate court can raise and address the legality of a sentence *sua sponte*." (citation omitted)); **Commonwealth v. Foster**, 960 A.2d 160, 163 (Pa. Super. 2008) (observing that "claims pertaining to the legality of sentence are non-waivable" (citation omitted)).[14]

At the conclusion of trial, at Case 9568, the trial court, *inter alia*, found Appellant guilty of PIC, and **not guilty** of persons not to possess firearms. N.T., 10/25/23, at 55; **see also id.** at 52 (prior to entry of its verdict, the trial court inquiring of the Commonwealth how Appellant could be guilty of two counts of persons not to possess firearms when he was alleged to have possessed a firearm on a single date, and stating that there "may be an

---

[14] Upon identifying a **potentially** meritorious/non-frivolous issue, after conducting our independent review, we generally remand for counsel to file an advocate's brief or supplemental **Anders** brief explaining why the issue is frivolous. **See**, **e.g.**, **Commonwealth v. Tukhi**, 149 A.3d 881, 889 (Pa. Super. 2016); **Commonwealth v. Orellana**, 86 A.3d 877, 883 (Pa. Super. 2014). Here, however, because Appellant is clearly entitled to relief (discussed *infra*), remand for this purpose is unnecessary. **See Commonwealth v. Hankerson**, 118 A.3d 415, 421 (Pa. Super. 2015) (granting the appellant relief, without remanding for additional briefing, after our independent review identified a "clearly meritorious" legality of sentence issue not raised in counsel's **Anders** brief).

argument for" guilty verdicts for two counts of PIC based on Appellant's use of the firearm in separate criminal incidents). Notwithstanding its verdict, the trial court thereafter sentenced Appellant, at Case 9568, to terms of incarceration for third-degree murder and persons not to possess firearms.

Pennsylvania Rule of Criminal Procedure 621 provides that "[w]hen a jury trial is waived, the trial judge shall determine all questions of law and fact and render a verdict which shall have the same force and effect as a verdict of a jury." Pa.R.Crim.P. 621(A); *see also Commonwealth v. Farinella* 887 A.2d 273, 275 (Pa. Super. 2005) (citing Rule 621, observing that "**once announced in open court**, … the [trial] court's [nonjury] verdict was the same as if rendered by a jury." (emphasis added)).

Our Supreme Court squarely addressed the issue of a trial court, following a nonjury trial, sentencing a defendant for crimes of which it acquitted the defendant at the conclusion of trial:

> The law is clear that, once a verdict is rendered, a court's authority to alter that verdict is severely circumscribed. An ambiguous or mistaken verdict may be susceptible to correction, but typically it must be corrected immediately, lest the authority to fix the error be lost forever. Thus, for example, if a trial court misspeaks, but corrects that misstatement seconds later, the court has run afoul of no law. As well, an obvious and indisputable clerical or transcription error can be corrected, even if time has passed, but only in extremely rare cases…. [U]nless the verdict was flawed in some fashion that relegated it subject to attack, once the verdict is announced and recorded, a trial court has no authority to *sua sponte* take any remedial or corrective actions. Otherwise, only upon the consideration of post[-]verdict motions in arrest of judgment or the granting of a new trial will a court be vested with the power to alter a verdict, once rendered. Neither discomfort

- 26 -

nor unstated, generalized intentions can expand a court's authority over a verdict.

***Commonwealth v. Chambers***, 310 A.3d 76, 91-92 (Pa. 2024) (footnotes and quotation marks omitted).

Here, at Case 9568, the trial court found Appellant guilty of PIC, and not guilty of persons not to possess firearms. N.T., 10/25/23, at 52. The trial court's verdict was unambiguous and final; therefore, Appellant's sentence of 5 to 10 years for persons not to possess firearms at Case 9568 was illegal. ***See Chambers***, 310 A.3d at 94 ("Rule 621 and Pennsylvania precedents clearly prohibit a trial court from *sua sponte* changing a verdict from not guilty to guilty, except in extraordinary circumstances."). Accordingly, we vacate Appellant's sentence, at Case 9568, for persons not to possess firearms.[15]

Finally, our independent review discloses no other non-frivolous issues Appellant could raise. Because the instant appeal is not wholly frivolous, and because we have granted Appellant relief from which the Commonwealth may choose to petition our Supreme Court for allowance of appeal, we deny Counsel's motion to withdraw. ***See Hankerson***, 118 A.3d at 422 (denying counsel's petition to withdraw after remanding for resentencing to correct an

_____

[15] Because our disposition does not disturb the trial court's overall sentencing scheme, we do not remand for resentencing. ***See Commonwealth v. Lomax***, 8 A.3d 1264, 1268-69 (Pa. Super. 2010) (stating when this Court vacates a sentence without disturbing the overall sentencing scheme, there is no need for remand); ***see also Commonwealth v. Carey***, 249 A.3d 1217, 1229 (Pa. Super. 2021) (same).

illegal sentence identified upon our independent review). We further vacate Appellant's sentence, at Case 9568, for persons not to possess firearms. In all other respects, the judgment of sentence is affirmed.

Counsel's motion to withdraw denied. Appellant's motion for appointment of counsel denied. Judgment of sentence vacated in part and affirmed in part in accordance with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/4/2026